Opinion
ROTHMAN, J.
This is an appeal by plaintiff, Jewell Jubert, from a judgment entered in favor of defendants, Shalom Realty and Shalom Ben-Levy, following the granting of defendant’s motion for summary judgment. We affirm.
On September 16, 1980, plaintiff filed a complaint for damages against defendants, the owners and managers of the apartment building in which plaintiff was a resident, following the destruction by fire of *Supp. 3 plaintiff’s automobile while the vehicle was parked in the parking area of said building. The complaint alleged that defendants failed to exercise ordinary care in the management of the parking area by permitting unauthorized persons to loiter in and around that area and, that such failure was the proximate cause of the fire which was deliberately set by a nonresident individual. The complaint further alleged that defendant was on notice, prior to the time of the fire in question, that unauthorized persons had been seen loitering in and around the parking area and that there had been previous instances of vandalism to cars parked therein.
Defendants answered the complaint, denying all of the allegations and raising as an affirmative defense the fact that the damage for which plaintiff sought recovery was the direct and proximate result of the independent unlawful conduct of third persons, rather than any act or omission on the part of defendants. Subsequently, on June 26, 1981, defendants filed a motion to dismiss the complaint for failure to state a claim on which relief can be granted based on the assertion that a landlord has no duty to insure against the criminal acts of third persons. The motion quoted extensively from plaintiff Jubert’s deposition testimony, taken on February 4, 1981, wherein, in addition to stating that he knew who started the fire and that he had previously reported vandalism to his car to defendants, plaintiff testified that no representations had ever been made by defendants regarding whether the building was a security building and that, other than the fact that unauthorized persons can gain access to it, there was nothing defective about the parking area.
This motion, which was treated by the court as a motion for summary judgment, was heard on September 3, 1981. On that date, the court issued an order granting the motion on the basis that, even if defendants had notice of prior vandalism, they were under no duty as landlords to take measures to prevent further acts of vandalism. The liability of a landlord for criminal acts of third persons, according to the court, is limited, and no such liability existed in this case where defendants did not undertake to provide security parking, made no representations regarding the providing of such security, and where the criminal acts did not result from a dangerous condition created by the landlord or from one which he. was obligated to remedy. Judgment in favor of defendants was entered thereafter on January 13, 1982.
*Supp. 4 The granting of a motion for summary judgment is proper “if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” (Code Civ. Proc., § 437c.) On appeal, plaintiff contends that a triable issue exists as to whether defendants, as landlords, could be held liable for injuries caused by the criminal acts of third persons under the circumstances presented here. In support of this contention, plaintiff relies on the recent decision in Kwaitkowski v. Superior Trading Co. (1981) 123 Cal.App.3d 324 [176 Cal.Rptr. 494].
In Kwaitkowski, a tenant of an apartment building sought damages for personal and pecuniary injuries in a complaint against the building’s landlord after she was raped, assaulted and robbed by a nonresident in the lobby of the building. There, the common areas of the apartment building, which was located in a high crime area, were dangerous and unsafe in that the lock on the front door leading to the lobby was defective and lights were missing. As a result, it was easy for strangers to gain access to the lobby in which the attack took place. In addition, the landlords had actual and constructive notice of the unsafe conditions in light of the fact that they had previously received complaints concerning the ineffective front door lock and were informed of an assault on another tenant prior to the attack on the plaintiff. Nonetheless, the landlords did nothing to correct the situation. After the trial court sustained the landlord’s demurrer to the complaint without leave and entered a judgment of dismissal, the Court of Appeal reversed, holding that the danger to plaintiff was foreseeable under the circumstances and that the landlord’s knowledge and failure to repair the lobby door affirmatively placed plaintiff in danger of the type of injuries which she sustained. Thus, plaintiff argues, in the instant case, as in Kwaitkowski, defendants’ notice of prior instances of vandalism and the presence of unauthorized persons in the garage placed defendants under a duty to take measures to secure the garage from the type of foreseeable criminal acts as were perpetrated on plaintiff’s property. We disagree.
The issue of a landlord’s liability for injuries sustained as a result of criminal activities was also addressed recently in 7735 Hollywood Blvd. Venture v. Superior Court (1981) 116 Cal.App.3d 901 [172 Cal.Rptr. 528]. In that case, the plaintiff-tenant brought suit against her landlord for injuries she received as a result of a rape committed against her by an intruder who forced entry into her apartment. The plaintiff sought to hold the landlord liable on the ground that the landlord had knowledge of recent violent crimes, including rape, in the general area, and that *Supp. 5 the landlord had negligently failed to replace a burned-out light which illuminated the exterior of plaintiff’s apartment. In holding that the complaint failed to state a cause of action, the court in 7735 Hollywood Blvd. Venture v. Superior Court pointed out that:
“Plaintiff’s position here, if accepted, would impose an affirmative duty, on any owner of rental property, to install security devices ‘adequate’ to deter crime, because under plaintiff’s theory it was the lack of ‘adequate’ lighting which formed the basis for liability. That lack could include failure to install outside lighting in the first place as well as failure to maintain existing lighting ....
“It would be intolerable and grossly unfair to permit a lay jury, after the fact, to determine in any case that security measures were ‘inadequate,’ especially in light of the fact that the decision would always be rendered in a case where the security had in fact proved to be inadequate.
“‘It is an easy matter to know whether a stairway is defective and what repairs will put it in order..... but how can one know what measures will protect against the thug, the narcotic addict, the degenerate, the psychopath and the psychotic?’ (Goldberg v. Housing Auth. of Newark (1962) 38 N.J. 578 [186 A.2d 291, at P. 297, 10 A.L.R.3d 595].)” (Id. at p. 905.)
This language was cited with approval in Riley v. Marcus (1981) 125 Cal.App.3d 103 [177 Cal.Rptr. 827], where the Court of Appeal affirmed the trial court’s granting of a motion for summary judgment in favor of defendants in a case in which the plaintiff-tenant alleged that her landlords’ failure to provide adequate lighting and adequate door locks resulted in the entry into her apartment of an intruder who raped her. In that case, the court noted that defendants were not aware of any risks attendant to the premises which they concealed from plaintiff and that the manner of the installation of the locks on plaintiff’s apartment doors “did not constitute a representation that the doors, were secure against intruders, or that the premises were safe against such risks.” (Id., at p. 109.) Further, with respect to plaintiff’s theory that the defendant landlords undertook' to provide security by providing locks on her doors, and failed to do so adequately, the court in Riley found that: “Defendants did not voluntarily undertake to provide plaintiff with a security system by providing her with doors, door locks, windows and outside lighting. The items were commonplace and are furnished by vir *Supp. 6 tually every landlord to every tenant.” (Ibid.) The duty of the landlord, according to the court, was merely to take “reasonable precautions to prevent the reoccurrence of criminal acts which are known to be likely to reoccur.” (Id., at p. 110, italics added.)
Although, unlike the instant case, the defendant/landlords in Riley and 7735 Hollywood Blvd. Venture had no notice of similar crimes having been committed on the premises involved, we do not find this distinction compelling under the circumstances presented here. A landlord cannot be said to be under an affirmative duty to secure parking facilities which he never represented as being so protected, and where there was no showing that he failed to maintain or repair a defective security device which he did undertake to install, merely because he had notice of previous instances of vandalism to parked cars. As defendant points out, an unsecured open underground parking area is easily distinguishable from the situation presented in Kwaitkowski, involving the lobby of an apartment building in a high crime area where the landlord failed to repair a defective lock or maintain lighting despite bis knowledge of both the defects and of prior violent attacks on tenants. To hold otherwise would require landlords who provide parking areas for tenants to install bars and/or electronic gates, or to provide full-time security personnel to patrol the garage area, once he is placed on notice that vandalism has taken place in that area. Such a requirement clearly exceeds the duty to take “reasonable” precautions to prevent the reoccurrence of criminal acts. (Riley v. Marcus, supra, at p. 110.)
The judgment is affirmed. Respondents to recover costs on appeal.
Bernstein, P. J., and Foster, J., concurred.