[L.A. No. 31983. Feb. 28, 1985.]

MERVYN ISAACS et al., Plaintiffs and Appellants, v.
HUNTINGTON MEMORIAL HOSPITAL et al.,
Defendants and Respondents.

**COUNSEL**

Harney & Moore, David M. Harney and B. V. Yturbide for Plaintiffs and Appellants.

O'Flaherty, Abrahams & Carl and Peter Abrahams for Defendants and Respondents.

**OPINION**

**BIRD, C. J.**—This court must decide whether a plaintiff, in an action against a landowner for criminal acts of third persons on the landowner's property, may establish foreseeability other than by evidence of prior similar incidents on those premises.

## I.

Plaintiff, Mervyn Isaacs, is an anesthesiologist affiliated with defendant, Huntington Memorial Hospital, a private hospital located in Pasadena. On March 26, 1978, at approximately 8:30 p.m., Dr. Isaacs arrived at the hospital with his wife. He parked their car in the hospital's research parking lot which was located across the street from the emergency room and the physicians' entrance to the hospital. The lot was open "to anyone who wished to park there." While his wife was visiting a friend at the hospital, Dr. Isaacs saw some of his patients who were to undergo surgery.

About 10 p.m., Dr. Isaacs, his wife and a family friend left the building and went to the Isaacs' car. While Dr. Isaacs was moving some belongings from the back seat to the trunk, Ms. Isaacs and the friend got into the car. As he was closing the lid to the trunk, Dr. Isaacs was grabbed from behind by a man who held a gun to the doctor's chest. Dr. Isaacs put up his hands and began to turn around very slowly. At that point, the assailant shot the doctor in the chest. The gunman then fled the scene and was never apprehended.

As a result of the shooting, Dr. Isaacs sustained severe injuries, including the loss of a kidney. He and his wife brought an action against the hospital and its insurance carrier, Truck Insurance Exchange (hereafter Exchange). The Isaacs alleged that the hospital failed to provide adequate security measures to protect its invitees and licensees against the criminal acts of third persons on its premises. Exchange was negligent, they contended, for participating in the hospital's decision to disarm its security guards. Plaintiffs

alleged that this decision directly contributed to the inadequacy of the security measures.

Both the hospital and Exchange filed motions for summary judgment. The trial court granted Exchange's motion and denied the hospital's. The case proceeded to trial, and plaintiffs introduced the following evidence.

Harold Bastrup, a security consultant, testified that the hospital was located in a "high crime area." He based this conclusion on incident reports from the hospital and the Pasadena Police Department. Numerous assaults or threatened assaults had occurred on the hospital premises during the three years preceding Dr. Isaacs' shooting.[1]

Among those incidents were several threatened assaults with deadly weapons in the emergency room area across from the research parking lot. In September of 1977, a man pulled out a knife and threatened to cut another person's head off. A security guard, displaying a baton, attempted to talk the assailant into dropping the knife. The guard's efforts were futile until he pulled out his gun. In January of 1977, a man with a knife threatened to assault a person in the hospital emergency room. In March of that same year, a person brandished a rifle in the emergency room. The security guards were able to disarm him.

Plaintiffs also presented evidence of thefts in the vicinity. In August of 1976, a purse snatching occurred near the hospital. In September of 1977, a person grabbed money from a counter in the hospital and ran away.

In addition, a security guard for the hospital testified that incidents involving harassment of persons in the emergency area were "very common." In September of 1977, one such incident, which occurred in front of the emergency room, involved 10 to 12 male adults who were "disturbing the peace [and] drinking."

Testimony was also offered concerning the danger associated with emergency room areas. David Wright, the former director of security at a different hospital, testified that emergency rooms, surrounding areas, and nearby parking lots are the areas with the "highest potential for violent acts." He noted that such areas are "subject to a lot of criminal elements."

Hospital personnel conceded that the emergency room area was frequented by persons under the influence of drugs and alcohol. Dr. Charles Berg-

---

[1]The trial judge ruled that any references to prior criminal activity would be limited to "assaultive crimes or thefts" which occurred in the parking lots or in the emergency room area, "and if there are any others I would not want reference to them unless we had a hearing outside the hearing of the jury."

quist, who was at the hospital on the night of the shooting, testified that upon entering the hospital that night, "many people [were] milling around . . . drinking out of bottles and brown paper packages." Dr. Bergquist described the scene as "scary" and "physically threatening." He also testified that this was not unusual activity.

Plaintiffs also presented evidence concerning security. At the time of the shooting, the hospital had three security guards on duty. One guard was stationed inside the emergency room entrance at the visitor control desk. Another guard was stationed in the employee parking lot, which was located a considerable distance from both the emergency area and the research parking lot.[2] The third guard was on roving patrol on the second floor in one of the buildings.

The guards were unarmed.[3] They wore uniforms and carried flashlights but no nightsticks or mace. Guard dogs were not used.

The hospital also had numerous television cameras at various locations around the hospital to monitor activity in those areas. With the exception of one camera which covered the employee parking lot, all of the cameras were used to view activity inside the hospital.

An escort service was available to protect hospital staff. However, there was conflicting evidence as to whether this service had ever been used by or was known to the doctors.

Evidence was presented concerning the lighting in the research parking lot on the night of the incident. Two lights on the side of the research building, which normally provided some of the light in the research parking lot, were not lit. The testimony as to the lighting conditions in the research parking lot was in conflict. Two witnesses described it as "poor," "dim," and "very dimly lighted." However, two other witnesses said it was "good" and "fair to good."

Finally, plaintiffs presented testimony from two experts in security matters. Both concluded that the hospital's security on the night of the shooting was "totally inadequate." They based their conclusions on (1) the insufficient number of guards, in view of the responsibilities assigned to them and

[2]During *shift changes for about a two-hour period, one guard was always stationed in the* employee parking lot. The shooting occurred during one of these two-hour periods.

[3]The guards were originally permitted to carry firearms. In September of 1977, however, the hospital administration decided to disarm the guards. (See *post*, at p. 135.)

the size of the premises;[4] (2) inadequate administration of the security force; (3) failure to arm the guards with defensive weapons; (4) inadequate television monitoring of the parking lot areas; (5) a lack of any means of communication with the police department on an emergency basis; and (6) an absence of signs warning that the area was guarded. One expert concluded that these aspects rendered the research parking lot "totally devoid of any deterrents or security" on the night of the shooting.

At the close of plaintiffs' case in chief, the hospital moved for nonsuit. The trial court granted the motion and entered judgment in the hospital's favor on the ground that there was insufficient evidence to find the hospital liable.

The court concluded that "plaintiffs failed to introduce evidence essential to prove the following elements of their case: [¶] (a) Notice of prior crimes of the same or similar nature in the same or similar portion of defendant's premises; [¶] (b) The reasonable foreseeability of the subject crime occurring; [¶] (c) The minimum standards of security for premises similar to those of defendant for the period of time and locality involved; [and] [¶] (d) Any proof of causation . . . ."

Plaintiffs appeal from that judgment and from the summary judgment entered in favor of Exchange.

## II.

The primary question presented by this appeal is whether foreseeability, for the purposes of establishing a landowner's liability for the criminal acts of third persons on the landowner's property, may be established other than by evidence of prior similar incidents on those premises. Since foreseeability is of primary importance in establishing the element of duty (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36]), it is helpful to review the law in this area.

It is well settled that an owner of land has a duty "to take affirmative action to control the wrongful acts of third persons which threaten invitees where the [owner] has reasonable cause to anticipate such acts and the probability of injury resulting therefrom." (*Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 121 [52 Cal.Rptr. 561, 416 P.2d 793].) This duty is premised on the special relationship between the landowner and the invitee

---

[4]In 1978, the hospital had a capacity of 565 beds and employed approximately 1,600 people. The hospital complex consisted of 25 to 30 acres, which included at least 5 parking lots. One of the experts opined that a security guard should have been stationed at each parking lot.

(see Rest.2d Torts, §§ 314A, 315) and the general duty to exercise reasonable care in the management of one's property (see Civ. Code, § 1714, subd. (a);[5] *Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 806-807 [205 Cal.Rptr. 842, 685 P.2d 1193]).

■ "It has long been recognized that 'a possessor of land who holds it open to the public for entry for business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent or intentionally harmful acts of third persons . . . and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.'" (*Peterson* v. *San Francisco Community College Dist.*, *supra*, 36 Cal.3d at p. 807, quoting Rest.2d Torts, § 344.)

■ The Restatement Second of Torts, section 344, comment (f) further details the circumstances under which such a duty arises: "Since the [owner of land] is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. *If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.*" (Italics added.)

■ Whether such a duty exists is a question of law to be determined on a case-by-case basis. (*Weirum* v. *RKO General, Inc.*, *supra*, 15 Cal.3d at p. 46.) ■ In considering whether one owes another a duty of care, several factors must be weighed, including: " ' "[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and con-

---

[5]Civil Code section 1714, subdivision (a) provides in relevant part: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself."

sequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]" (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; [citations].)' " (*Peterson* v. *San Francisco Community College Dist., supra,* 36 Cal.3d at p. 806.)

■ It is clear that foreseeability is but one factor to be weighed in determining whether a landowner owes a duty in a particular case. "In this balancing process, foreseeability is an elastic factor. (2 Harper & James [Law of Torts (1956)] § 18.2, at p. 1026.) The degree of foreseeability necessary to warrant the finding of a duty will thus vary from case to case. For example, in cases where the burden of preventing future harm is great, a high degree of foreseeability may be required. [Citation.] On the other hand, in cases where there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required." (*Gomez* v. *Ticor* (1983) 145 Cal.App.3d 622, 629-630 [193 Cal.Rptr. 600].) Thus, foreseeability is a somewhat flexible concept.

■ A recent line of Court of Appeal cases has rigidified the foreseeability concept in situations involving a landowner's liability for the criminal acts of third persons against invitees. Those cases have established the rule that "in the absence of prior similar incidents, an owner of land is not bound to anticipate the criminal activities of third persons, particularly where the wrongdoer was a complete stranger to both the landowner and the victim and where the criminal activity leading to the injury came about precipitously." (*Wingard* v. *Safeway Stores, Inc.* (1981) 123 Cal.App.3d 37, 43 [176 Cal.Rptr. 320]; accord *Anaya* v. *Turk* (1984) 151 Cal.App.3d 1092, 1099 [199 Cal.Rptr. 187]; *Riley* v. *Marcus* (1981) 125 Cal.App.3d 103, 109 & fn. 2 [177 Cal.Rptr. 827]; *Jamison* v. *Mark C. Bloome Co.* (1980) 112 Cal.App.3d 570, 578-580 [169 Cal.Rptr. 399]; *Totten* v. *More Oakland Residential Housing, Inc.* (1976) 63 Cal.App.3d 538, 543 [134 Cal.Rptr. 29]; *Rogers* v. *Jones* (1976) 56 Cal.App.3d 346, 351-352 [128 Cal.Rptr. 404]; see also *Jubert* v. *Shalom Realty* (1982) 135 Cal.App.3d Supp. 1, 6 [185 Cal.Rptr. 641].)

This rule is fatally flawed in numerous respects. First, the rule leads to results which are contrary to public policy. The rule has the effect of discouraging landowners from taking adequate measures to protect premises which they know are dangerous. This result contravenes the policy of preventing future harm. Moreover, under the rule, the first victim always loses, while subsequent victims are permitted recovery. Such a result is not only unfair, but is inimical to the important policy of compensating injured par-

ties (*Peterson* v. *San Francisco Community Cffollege Dist.*, *supra*, 36 Cal.3d at p. 814). Surely, a landowner should not get one free assault before he can be held liable for criminal acts which occur on his property.

Second, a rule which limits evidence of foreseeability to prior similar criminal acts leads to arbitrary results and distinctions. (*Mullins* v. *Pine Manor College* (1983) 389 Mass. 47 [449 N.E.2d 331, 337], fn. 12.) Under this rule, there is uncertainty as to how "similar" the prior incidents must be to satisfy the rule. The rule raises a number of other troubling questions. For example, how close in time do the prior incidents have to be? How near in location must they be? The rule invites different courts to enunciate different standards of foreseeability based on their resolution of these questions.

Third, the rule erroneously equates foreseeability of a particular act with previous occurrences of similar acts. This court has already rejected that notion. ■ " 'The mere fact that a particular kind of an accident has not happened before does not . . . show that such accident is one which might not reasonably have been anticipated.' [Citation.] Thus, the fortuitous absence of prior injury does not justify relieving defendant from responsibility for the foreseeable consequences of its acts." (*Weirum* v. *RKO General, Inc.*, *supra*, 15 Cal.3d at p. 47.)

■ Finally, the "prior similar incidents" rule improperly removes too many cases from the jury's consideration. ■ It is well established that foreseeability is ordinarily a question of fact. (*Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 56 [192 Cal.Rptr. 857, 665 P.2d 947]; *Weirum* v. *RKO General, Inc.*, *supra*, 15 Cal.3d at p. 46.) "It may be decided as a question of law only if, 'under the undisputed facts there is no room for a reasonable difference of opinion.' [Citations.]" (*Bigbee* v. *Pacific Tel. & Tel. Co.*, *supra*, 34 Cal.3d at p. 56.)

■ There is a general reluctance to remove foreseeability questions from the jury. (See *Cohen* v. *Southland Corp.* (1984) 157 Cal.App.3d 130, 140-141 [203 Cal.Rptr. 572].) ■ Foreseeability " 'is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct.' [Citation.] One may be held accountable for creating even ' "the risk of a slight possibility of injury if a reasonably prudent [person] would not do so." ' " (*Bigbee* v. *Pacific Tel. & Tel. Co.*, *supra*, 34 Cal.3d at p. 57.)

■ Thus, foreseeability is determined in light of all the circumstances and not by a rigid application of a mechanical "prior similars" rule. (Cf.

*Bigbee* v. *Pacific Tel. & Tel. Co., supra,* 34 Cal.3d at pp. 57-58.) As this court has held, "what is required to be foreseeable is the general character of the event or harm . . . not its precise nature or manner of occurrence." (*Ibid.*) Prior similar incidents are helpful to determine foreseeability but they are not necessary. A rule that limits evidence of foreseeability to prior similar incidents deprives the jury of its role in determining that question.

A number of Courts of Appeal have properly recognized that evidence of prior similar incidents is not the sine qua non of a finding of foreseeability. (*Kwaitkowski* v. *Superior Trading Co.* (1981) 123 Cal.App.3d 324, 329 [176 Cal.Rptr. 494]; *Gomez* v. *Ticor, supra,* 145 Cal.App.3d 622, 630; see also *Cohen* v. *Southland Corp., supra,* 157 Cal.App.3d 130, 140-142.) These cases express the better view.

In *Kwaitkowski* v. *Superior Trading Co., supra,* 123 Cal.App.3d 324, the plaintiff was raped and robbed in the lobby of her apartment building. She sued her landlords, alleging that they had notice that (1) the lock of the lobby entrance door was defective at the time of the attack, (2) the apartment building was in a "high crime area," and (3) that an assault and robbery had occurred previously in another common area of the building. The trial court sustained the landlords' demurrer without leave to amend. (*Id.,* at pp. 325-326.)

In reversing the judgment of dismissal, the Court of Appeal noted that "[f]oreseeability does not require prior identical or even similar events." (123 Cal.App.3d at p. 329.) The court reasoned that "[w]hether a given criminal act is within the class of injuries which is reasonably foreseeable depends on the totality of the circumstances and not on arbitrary distinctions . . . ." (*Id.,* at p. 329.) In concluding that the attack was foreseeable, the court focused on the defective nature of the premises (a broken lock), the easy access that strangers had to the interior of the building, the neighborhood in which the apartment building was located, and the prior assault and robbery. (*Id.,* at pp. 328-329.)

Two Courts of Appeal have echoed similar concerns. (*Gomez* v. *Ticor, supra,* 145 Cal.App.3d 622, 630; *Cohen* v. *Southland Corp., supra,* 157 Cal.App.3d 130, 140-142.) These courts have adhered to the *Rowland* analysis of landowner duty, weighing foreseeability with other factors. (See *Rowland, supra,* 69 Cal.2d at pp. 112-113; *ante,* at p. 124.) Both courts have also emphasized that foreseeability should be determined by the jury in light of all the circumstances.

In *Gomez,* robbers shot and killed their victim as he was returning to his car in the parking structure of an office building. Plaintiffs, the victim's

survivors, introduced evidence of the "high-crime character" of the neighborhood and of specific instances of theft and vandalism. Reversing summary judgment in favor of the defendant, the Court of Appeal held that despite the plaintiffs' failure to present evidence of prior assaults on the premises, a question of fact remained as to the foreseeability of the attack. (145 Cal.App.3d at p. 632.)

The court noted that "in its very operation of a parking structure, defendant may be said to have created 'an especial temptation and opportunity for criminal misconduct,' thus increasing the foreseeability of the attack." (145 Cal.App.3d at p. 628, quoting Prosser, Torts (4th ed. 1971) § 33, p. 174.) "[T]he deserted . . . nature of these structures, especially at night, makes them likely places for robbers and rapists to lie in wait. Robbery, rape, and violent consequences to anyone who interrupts these crimes, may thus also be foreseeable." (145 Cal.App.3d at p. 628.)

Applying a *Rowland* analysis, the *Gomez* court held that the foreseeability of the attack would have engendered a minimal duty to provide a " 'first line of defense.' " (*Gomez, supra,* 145 Cal.App.3d at pp. 629-632.) The court noted that "[a] lesser degree of foreseeability is required when the proposed duty is minimal, i.e., when it involves the taking of simple, effective, easily defined steps." (*Id.,* at p. 632.) "[T]he peculiar attraction which a large commercial building's unattended parking structure poses for the criminal may necessitate some minimal human or mechanical means of protecting patrons. . . . [S]uch minimal precautions are certain to have an appreciable effect in preventing crimes and in warning patrons . . . ." (*Ibid.*) The court concluded that such minimal measures would not "place an onerous burden upon [the] defendant or society." (*Id.,* at p. 633.)

In *Cohen* v. *Southland Corp., supra,* 157 Cal.App.3d 130, a customer in a 7-Eleven store was shot while attempting to prevent an armed robbery. The customer sued the owner, the franchisee and an employee of the store, alleging that the defendants negligently failed to protect store patrons from assault or other threatening behavior by would-be robbers. (*Id.,* at p. 134.)

The Court of Appeal reversed a summary judgment in favor of the defendants. Since robberies had previously occurred at the particular store,[6] and nighttime robberies of other 7-Eleven stores were frequent, the court held that the evidence raised a triable issue of fact as to foreseeability of the injury. (*Cohen, supra,* 157 Cal.App.3d at p. 139.) Noting the general reluctance to remove foreseeability questions from the jury, the court rea-

---

[6]The defendants had argued that the injury was unforeseeable because no prior *injury-producing* armed robberies had occurred at that 7-Eleven store. (157 Cal.App.3d at p. 139.)

soned that "[i]n the very operation of an allnight convenience store, defendants may be said to have created 'an especial temptation and opportunity for criminal misconduct,' thus increasing the foreseeability of injury resulting from third party misconduct . . . ." (*Id.,* at pp. 140-141, quoting Prosser, Torts, *supra,* § 33, p. 174.)

The Court of Appeal then proceeded to analyze the defendants' duty in terms of the *Rowland* factors. If the plaintiff established that the injury was foreseeable, then the defendants owed him a minimal duty of care. (*Cohen, supra,* 157 Cal.App.3d at p. 143.) The imposition of a duty to take reasonable precautions against nighttime robberies would not place an onerous burden on the defendants or the community. Rather, the community would benefit from the imposition of such a duty. (*Id.,* at p. 142.)

The courts in both *Gomez* and *Cohen* analyzed foreseeability in light of all the circumstances, correctly recognizing that foreseeability depends on the facts in each case. Prior incidents, whether similar or not, were properly held to constitute evidence of foreseeability. Such incidents were helpful in establishing foreseeability, but not required to satisfy this element.

As *Gomez* and *Cohen* illustrate, other types of evidence may also establish foreseeability, such as the nature, condition and location of the defendant's premises. ■ In analyzing foreseeability in this manner, these courts properly followed the well-settled rule that "what is required to be foreseeable is the general character of the event or harm . . . not its precise nature or manner of occurrence." (*Bigbee* v. *Pacific Tel. & Tel. Co., supra,* 34 Cal.3d at pp. 57-58.) In addition, both *Gomez* and *Cohen* correctly analyzed the defendant-landowner's duty in terms of the *Rowland* factors.

## III.

■ ■ In the present case, this court must determine whether the trial court's invocation of the "prior similar incidents" rule was a proper basis on which to grant defendant's motion for nonsuit.

A judgment of nonsuit removes the case from the trier of fact. For this reason, courts have traditionally taken a very restrictive view of the circumstances under which such a judgment is proper. ■ Thus, it is established that a trial court may not grant a defendant's motion for nonsuit if the plaintiff's evidence would support a jury verdict in the plaintiff's favor. (*Campbell* v. *General Motors Corp.* (1982) 32 Cal.3d 112, 117-118 [184 Cal.Rptr. 891, 649 P.2d 224, 35 A.L.R.4th 1036]; *Ewing* v. *Cloverleaf Bowl* (1978) 20 Cal.3d 389, 395 [143 Cal.Rptr. 13, 572 P.2d 1155].)

"In determining whether plaintiff's evidence is sufficient, the [trial] court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give 'to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor . . . .' [Citation.]" (*Campbell* v. *General Motors Corp.*, *supra*, 32 Cal.3d at p. 118.) " 'The mere fact that other inferences adverse to plaintiff might be drawn does not render the inference favorable to plaintiff too conjectural or speculative for consideration [by the jury].' [Citations.]" (*Id.*, at p. 121.)

 The totality of the circumstances in this case strongly suggests that the foreseeability of an assault in the research parking lot should have been submitted to the jury. The hospital was located in a high crime area. Several threatened assaults had occurred in the emergency room area directly across from the research parking lot. There had been thefts in the area. A hospital security guard testified that incidents involving "harassment" were "very common." According to one expert witness, emergency room facilities and surrounding areas are inherently dangerous. Parking lots, by their very nature, create an "especial temptation and opportunity for criminal misconduct . . . ." (Prosser, Torts, *supra*, § 33, p. 174; see *Gomez* v. *Ticor*, *supra*, 145 Cal.App.3d at p. 628.)

Further, two of the lights on the building adjacent to the research parking lot, which normally illuminated that area, were not working on the evening Dr. Isaacs was shot. Two witnesses testified that the research parking lot itself had poor lighting. "That a mugger thrives in dark places is a matter of common knowledge." (*Slapin* v. *Los Angeles International Airport* (1976) 65 Cal.App.3d 484, 488 [135 Cal.Rptr. 296].) In addition, the research parking lot was devoid of any security at the time of Dr. Isaacs' shooting. This contrasted markedly with the security at another parking lot on the hospital's premises, where a security guard was stationed during shift changes and activity was monitored by a television camera. This information, all of which was known or should have been known to the hospital, was sufficient to provide notice of a risk of an assault in the research parking lot.

Under these circumstances, the trial court erred in concluding *as a matter of law* that Dr. Isaacs' assault was not foreseeable.[7] " '[J]ust as we may not

---

[7]This is not to suggest that nonsuit will always be improper in such cases. The information available to the landowner must suggest that "he should reasonably [have] anticipate[d] careless or criminal conduct on the part of third persons . . . ." (Rest.2d Torts, § 344, com. (f).) In addition, foreseeability must still be weighed with the other *Rowland* factors in determining whether a duty existed. (See *post*, at pp. 131-132.)

rely upon our private judgment on this issue, so the trial court may not impose its private judgment upon a situation, such as this, in which reasonable minds may differ.' [Citation.]" *(Bigbee* v. *Pacific Tel. & Tel. Co., supra,* 34 Cal.3d at p. 59.)

It is of no consequence that the injury to plaintiffs was brought about by the criminal acts of a third person. ■■■ "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." (Rest.2d Torts, § 449; accord *Bigbee* v. *Pacific Tel. & Tel. Co., supra,* 34 Cal.3d at p. 58; *Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d at p. 47.)

■■■ Applying the *Rowland* factors *(ante,* at pp. 124-125), it is evident that the hospital had a duty to take precautions to protect Dr. Isaacs from criminal assaults in the parking lot. The foreseeability of an assault was high in comparison to the minimal burden on the hospital to take security measures to ensure the safety of persons using the research parking lot.

The value to the community of imposing such a duty is manifest. That plaintiff suffered serious injury is clear. A jury's affirmative finding on foreseeability would establish not only " 'the foreseeability of harm to plaintiff,' " but also a sufficiently " 'close[] connection between the defendant[s'] conduct and the injury suffered.' " (See *Bigbee* v. *Pacific Tel. & Tel. Co., supra,* 34 Cal.3d at pp. 59-60, fn. 14.)[8] Although defendants' conduct may have been without moral blame, imposition of liability would further the policy of preventing future harm. The evidence clearly indicates that a duty existed.

■■■ Once a court finds that the defendant was under a duty to protect the plaintiff, it is for the factfinder to decide whether the security measures were reasonable under the circumstances. (See *Musgrove* v. *Ambrose Properties, supra,* 87 Cal.App.3d at p. 53.) The jury must decide whether the security was adequate.

---

[8]In granting the hospital's motion for nonsuit, the trial court stated that plaintiffs had failed to introduce evidence as to causation. But as *Bigbee* makes clear, "[a]n affirmative finding on foreseeability by the jury would obviously establish . . . a sufficiently 'close[] connection between the defendant[s'] conduct and the injury suffered.' " *(Bigbee, supra,* 34 Cal.3d at pp. 59-60, fn. 14.) Thus, the erroneous foreseeability conclusion necessarily calls into question the trial court's conclusion on causation. In any event, the question of whether defendants' alleged breach of duty caused the injury was a factual one. *(Musgrove* v. *Ambrose Properties* (1978) 87 Cal.App.3d 44, 53 [150 Cal.Rptr. 722].) The evidence of foreseeability was sufficient to withstand a motion for nonsuit on the issue of causation. Thus, the trial court's finding on this point cannot be upheld.

■ Since the evidence clearly indicates that a duty existed as a matter of law, the trial court erred in removing the case from the jury by granting the hospital's motion for nonsuit.

IV.

Plaintiffs also challenge several of the trial court's evidentiary rulings. In order to provide guidance on remand, the propriety of these rulings must be reviewed.

■ Plaintiffs first challenge the trial court's pretrial ruling that evidence of prior incidents should be limited to assaultive crimes or thefts which occurred in the parking lots or in the emergency room area. Plaintiffs argue that *any* incident which may have alerted the hospital to the need for effective security should have been admissible, including incidents which occurred in the buildings or on nearby property.

The trial court's pretrial ruling was not as broad as plaintiffs contend. The court did not foreclose plaintiffs from presenting evidence of *any* incidents which were relevant on the issue of notice. Rather, as to incidents other than assaultive crimes or thefts which occurred in the parking lots or emergency room, the court simply required plaintiffs to request a hearing outside the presence of the jury if such evidence were to be offered. (See *ante,* fn. 1.) That limitation was reasonable.

■ At trial, the court did exclude evidence of one incident on the ground that it had not occurred in the parking lots or in the emergency room. This incident involved an alleged kidnaping which had occurred in the parking lot of a nearby building not located on hospital grounds. In view of the abrogation of the "prior similars rule," this ruling may have been in error.

On remand, the trial court is directed to admit such evidence if plaintiffs can satisfactorily demonstrate the probative value of this incident to the foreseeability of criminal activity on the hospital's premises. The trial court may exercise its discretion under Evidence Code sections 350 and 352 if it believes that the link between the two occurrences is too tenuous or if it finds that the defendant did not know and could not reasonably have known of the incident.

■ Plaintiffs next challenge the trial court's ruling excluding evidence of incidents which occurred four years prior to the shooting of Dr. Isaacs. The trial court ruled that the cutoff point was three years.

This limitation was too arbitrary. ▮▮▮▮ "There is no rule requiring that, for prior [incidents] to be relevant, they must occur within any given time period prior [to the incident] in question. The only test is one of reasonableness. If a prior [incident] is too remote in time, it would not be relevant under this test of reasonableness." (1 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 21.7, p. 572.)

Of course, the trial court has discretion to exclude evidence of prior incidents whose probative value is outweighed by undue prejudice, confusion of the issues or undue consumption of time. (Evid. Code, § 352.) For example, a prior identical or similar incident which occurred five years ago may have greater probative value than a dissimilar incident which occurred only three years ago. A trial court should determine the admissibility of each incident on the basis of whether it is relevant under Evidence Code section 350 and satisfies the requirements of Evidence Code section 352. Remoteness in time is but one factor in this assessment.

▮▮▮▮ Finally, plaintiffs challenge the trial court's ruling striking testimony regarding crime statistics for the City of Pasadena. Plaintiffs argue that such evidence was admissible in support of their expert's conclusion that Pasadena was the city with the second highest crime rate in Los Angeles County. Plaintiffs contend that the trial court's ruling was contrary to Evidence Code section 802, which permits a witness to state the matter upon which he relies for his opinion.[9]

Plaintiffs contend that their expert's testimony was based upon "statistics prepared by California's criminal justice department . . . ." The record belies this claim. The expert admitted that he had never seen any document prepared by the California Department of Justice. Rather, he had received the statistics from a "contact at a police department . . . ."

Evidence Code section 801, subdivision (b) permits an expert to rely upon inadmissible evidence if it is "of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates . . . ." (See also 2 Jefferson, Cal. Evidence Benchbook, *supra,* § 29.4, pp. 1026-1027.) Plaintiffs' expert would clearly have been entitled to testify about information that he had read in a California Department of Justice report. However, what he learned from an unidentified contact in an

---

[9]Evidence Code section 802 provides: "A witness testifying in the form of an opinion may state on direct examination the reasons for his opinion and the matter . . . upon which it is based, unless he is precluded by law from using such reasons or matter as a basis for his opinion. The court in its discretion may require that a witness before testifying in the form of an opinion be first examined concerning the matter upon which his opinion is based."

unidentified police department scarcely constitutes the sort of material that may be reasonably relied upon by an expert in forming his opinion. (Cf. *People* v. *Odom* (1980) 108 Cal.App.3d 100, 115-116 [166 Cal.Rptr. 283].) On remand, the trial court should exclude this evidence.

## V.

The next question is whether the trial court erred in granting summary judgment in favor of the hospital's insurer, Truck Insurance Exchange.

Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no triable issue of fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].) The court must strictly construe the affidavits of the moving party and liberally construe those of his opponent. (*Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 437 [74 Cal.Rptr. 895, 450 P.2d 271].)

Plaintiffs contend that summary judgment in favor of Exchange was improperly granted because there was a triable issue of fact regarding the insurer's participation in the hospital's decision to disarm its security guards. Thus, it is argued, Exchange had some degree of control over the hospital's security system.

A defendant cannot be held liable for the defective or dangerous condition of property which it did not own, possess, or control. Where the absence of ownership, possession, or control has been unequivocally established, summary judgment is proper. (*Whitney's at the Beach* v. *Superior Court* (1970) 3 Cal.App.3d 258, 269 [83 Cal.Rptr. 237]; *Bill* v. *Superior Court* (1982) 137 Cal.App.3d 1002, 1014-1015 [187 Cal.Rptr. 625]; *Peterson* v. *City of Vallejo* (1968) 259 Cal.App.2d 757, 773-777 [66 Cal.Rptr. 776]; see also *Gillespie* v. *City of Los Angeles* (1950) 36 Cal.2d 553, 555-557 [225 P.2d 522].)

Here, the vice president of Exchange declared that his company had no ownership or possessory interest in the hospital's premises and exercised no authority or control over the hospital's security practices. He further declared that Exchange took no part in deciding what security measures were to be implemented at the hospital, such as "the number, duties or weapons carried by [the] security officers." He concluded that the only relationship between Exchange and the hospital was that of insurer and insured.

Plaintiffs countered this declaration with the deposition testimony of the hospital's vice president of administration, Walter Noce, Jr. Noce testified that the decision to disarm the guards at the hospital, made prior to Dr. Isaacs' shooting, was made collectively on the basis of information given by several persons, including representatives of Exchange. Noce also testified, however, that Exchange "had no specific recommendation that they—that security officers should or should not carry arms, [and] that the hospital's liability coverage would be in effect whichever way the decision was made."

Considered in its entirety, the evidence unequivocally established that Exchange had no ownership, possession, or control of the hospital's premises. (See *Whitney's at the Beach* v. *Superior Court, supra,* 3 Cal.App.3d at p. 269.) Since there was no triable issue of fact, summary judgment in favor of Exchange was proper.[10]

## VI.

■ Foreseeability of harm should ordinarily be determined by a jury. That determination calls for the consideration of what is reasonable in light of all the circumstances. One such circumstance is whether the occurrence of prior similar incidents placed the defendant on notice that its security measures were not adequate to prevent harm to persons who use the defendant's premises. While prior similar incidents are helpful to determine foreseeability, they are not required to establish it. Other circumstances may also place the landowner on notice of a dangerous condition. A rule which limits proof of foreseeability to evidence of prior similar incidents automatically precludes recovery to first-injured victims. Such a rule is inherently unfair and contrary to public policy.

Plaintiffs' evidence strongly suggests that the jury could reasonably have concluded that the assault on Dr. Isaacs was foreseeable. Accordingly, the judgment of nonsuit is reversed and the case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion. The summary judgment in favor of defendant Exchange is affirmed.

---

[10]Relying on out-of-state authority, plaintiffs argue that an insurer should be subject to liability "where it did not merely perform an insurance function [but] undertook to assume or participate in control over the affairs of its insured." Even assuming the applicability of that authority here, the facts do not support the contention. There was no evidence that Exchange had any degree of control over the affairs of the hospital. The evidence shows only that Exchange insured the hospital and may have at some point explained to the hospital the scope of that coverage. The question of whether liability arises from an insurer's participation in the affairs of its insured is not presented by this case.

Mosk, J., Kaus, J., Broussard, J., Reynoso, J., Grodin, J., and Lucas, J., concurred.