[Civ. No. 6165.   Fourth Dist.   Nov. 5, 1959.]

PIONEER TITLE INSURANCE COMPANY (a Corporation), Respondent, v. MAX GUTTMAN et al., Appellants.

Jos. M. Wapner for Appellants.

Allen C. McGurk for Respondent.

GRIFFIN, P. J.—Plaintiff and respondent Pioneer Title Insurance Company (hereinafter referred to as Title Company) brought this action against defendants and appellants Max Guttman and wife to recover $2,644.27 on account of money expended and advanced for and on behalf of defendants. Judgment went for the plaintiff. Defendants appealed. The record comes to us on an agreed statement of facts including copies of necessary exhibits, as was done in the trial court.

On March 21, 1957, defendants owned certain real property in Imperial County. It was subject to a deed of trust executed on August 2, 1952, by defendants, as trustors, to plaintiff, Title Company, as trustee, in favor of one Smith and his wife, as beneficiaries to secure an obligation of defendants evidenced by a promissory note of even date. It was subsequently assigned by Smith and wife to a Riverside bank.

The property was also subject to a lease agreement, with option to buy, dated May 24, 1954, executed by defendants to Armand C. Feichtmeir and Company, as lessee, to which the deed of trust was subordinated. Defendants' lessors' interest was, on June 8, 1954, assigned to Smith and wife.

On March 21, 1957, defendants entered into an escrow agreement, at plaintiff's office, by the terms of which defendants agreed to sell the real property to Feichtmeir and Company for $35,500, $540 of which was paid outside of escrow, $5,460 to be paid through escrow, the balance of

$29,500 to be secured by a first trust deed executed by purchasers, naming defendants as beneficiaries.

Since the title had to be cleared of the recorded lease between defendants and Feichtmeir and Company, the Smiths, who held the interest of defendants, as lessors, under the assignment, made a signed written "demand upon your escrow from funds accruing to Max Guttman, et ux, for the sum of $970.98 plus interest at 5% per annum on $48,545.98 from January 14, 1956 to May 3, 1957."

It recited that "The quitclaim deed which we enclose herewith is to be used only upon settlement of this demand." A copy of this demand was approved in writing by defendants.

Filed in said escrow was a letter of instructions dated May 8, 1957, from the Riverside bank regarding the existing trust deed it held against the defendants' land including the amount necessary to pay the unpaid balance of the obligation secured by said deed of trust ($5,460) and instructions for use of request for full conveyance.

During the time the escrow was pending and about May 28, 1957, the defendants caused to be deposited to their account in said escrow the sum of $1,300.

The escrow was ready for closing on May 31, 1957, and about the closing date, plaintiff, through its escrow officer handling the escrow, (a) recorded full conveyance of the trust deed held by the Riverside bank and paid the bank $5,460 in accordance with the escrow instructions, (b) paid the sum of $1,034.14 to Smith and wife, but, in so doing, said escrow officer (apparently by error) computed interest on $970.98 instead of on $48,545.09 as called for in the Smiths' demand.

In closing the escrow, a recapitulation shows that from the sum of $5,460 deposited by the buyer, and the sum of $1,300 deposited for defendants' account, totaling $6,760, disbursements were made for escrow fees, etc., $207.68; to the Riverside bank, $5,460; to D. R. Smith and wife, $1,034.31; and to defendants Max Guttman and wife, $58.01, showing total disbursements of $6,760. The Smiths, by letters dated June 9 and June 13, called plaintiff's attention to the error in reference to interest and demanded an additional sum of $2,844.27 before title could be cleared to the property.

It appears that after discovery of this omission by plaintiff to withhold and pay over to the Smiths, interest on $48,545.98 rather than the sum of $970.98, as agreed upon by all necessary parties, plaintiff, after repeated and unsuccessful telephone calls to defendants at their home in Los Angeles, did, on June 19 pay to Smiths $2,844.27 additional interest, as

demanded. It is agreed that although repeated demands were later made upon defendants to reimburse plaintiff for this amount, defendants refused to do so.

After consideration of this evidence the trial court found generally that the allegations of the complaint were true and specifically found defendants became indebted to plaintiff for $2,844.27 on account of moneys expended and advanced to and for defendants and at their special request and that no part of it had been paid. Judgment was entered accordingly and costs were taxed at $30.80.

The principal contention on this appeal is that the judgment is against the law and the findings are not supported by the evidence. The argument is that the demand made by the Smiths and approved by defendants required plaintiff to pay the principal and interest "from funds accruing to Max Guttman, et ux" in the escrow then pending and since the escrow did not have funds "accruing to Max Guttman, et ux" with which to meet the demands of the Smiths, no legal liability devolved upon the plaintiff for the payment of said sum and since there was no legal liability on its part to do so, the payment of it was a voluntary one for which recovery may not be had. It is further argued that there was never any determination that there was a legal liability of plaintiff to pay this sum and that it was paid without compulsion or coercion. Citing such authority as *Watson* v. *Santa Carmelita etc. Co.*, 58 Cal.App.2d 709, 717 [137 P.2d 757]; *Western etc. Oil Co.* v. *Title Ins. & Trust Co.*, 92 Cal.App.2d 257, 265 [206 P.2d 643]; and *Texas Co.* v. *Todd*, 19 Cal.App.2d 174, 187 [64 P.2d 1180].

In support of the judgment plaintiff argues that it, as escrow holder, was the agent of the Smiths to safeguard and not use or record their quitclaim deed until their demand was met; that it was likewise the agent for defendants in this transaction to clear the title in accordance with their instructions; that it had a *legal obligation* to pay the Smiths' demand, particularly since defendants had approved this demand; that defendants have been unjustly enriched and should make restitution. Citing *Weaver* v. *Fickett*, 82 Cal.App. 116, 120 [255 P. 257]; *Jones* v. *Title Guaranty & Trust Co.*, 178 Cal. 375, 380 [173 P. 586]; 42 Cal.Jur.2d 796, 797, § 3; *Finnell* v. *Finnell*, 159 Cal. 535, 539 [114 P. 820]; *Page* v. *Podol*, 4 Cal.App.2d 229, 231 [41 P.2d 167]; *Batini* v. *Hoffman*, 147 Cal.App.2d 325 [305 P.2d 84].

The authories cited by plaintiff sufficiently support its con-

tentions. ██ *Weaver* v. *Fickett, supra,* particularly holds that one who is compelled, by reason of a legal liability therefor, to pay an obligation which another in equity and good conscience should pay, may recover from that other the money so paid; that it is not necessary that the payment should have been coerced by actual legal proceedings and the mere existence of the legal liability is sufficient. It further states that in such cases the law implies a request on the part of such other person, and a promise to repay. ██ *Jones* v. *Title Guaranty & Trust Co., supra,* definitely states that where plaintiff's money or property, deposited in escrow upon certain conditions, is disposed of without compliance with those conditions, he is entitled in an action against the escrow holder, to recover such damages as he may have suffered through the defendant's unwarranted act. The legal liability of plaintiff in the instant action was definitely shown. 18 California Jurisprudence 2d, Escrows, section 35, page 366, and cases cited. ██ *Dolman Co., Inc.* v. *Rubber Corporation,* 109 Cal. App. 353, 360 [293 P. 129], supports the rule that "except where the contract of agency contains stipulations contrary to or inconsistent with any right of the agent to . . . reimbursement for liabilities or expenditures incurred in the furtherance of the agency, an agent ordinarily is entitled . . . to reimbursement from his principal for all advances and expenditures properly made in carrying into effect the purpose of the agency."

██ Even though it does appear from the agreement or demand approved by defendants that the principal and interest due the Smiths was to be paid "from funds accruing to Max Guttman, et ux," it likewise appears therefrom that the quitclaim deed signed by the Smiths was to be "used only upon settlement of this demand." If plaintiff did not have sufficient funds in said escrow accruing to Max Guttman et ux., to meet this demand, as set forth therein, it was its duty to refuse to use said quitclaim deeds and to refuse completion of the transaction until said amount was available, in which case defendants would then have been called upon to pay this difference or the transaction would not have been consummated. Instead, with knowledge of the full facts, defendants took advantage of the completed transaction. Plaintiff became liable to Smiths for damages for the clerical error and the wrongful recordation of the quitclaim deeds without proper authorization and defendants benefited and became unjustly enriched by the resulting error and took full ad-

vantage of the payment made by plaintiff to its detriment. In the authorities relied upon by defendants, from the evidence there produced, it was not conclusive that a legal obligation or liability to pay existed. In the instant case such liability or obligation is indisputably shown. The findings and judgment of the trial court, in this respect, have evidentiary support.

■ The next question involves the propriety of the order denying a motion to strike the cost bill. The record shows that plaintiff filed its memorandum of costs on December 9, 1958, the same day the judgment was filed and entered. It does show that a copy of it was served, prematurely, on defendants by mailing it under date of December 1, 1958. Notice of entry of judgment, including costs of $30.80, as set forth in the memorandum of costs, was mailed to defendants on December 17, 1958. On December 26 defendants filed a motion to strike the cost bill from the file and the judgment, which was denied. Defendants claim error in this respect. Section 1033, Code of Civil Procedure, provides that one who claims his costs "must serve upon the adverse party, and file at any time after the verdict or decision of the court, and not later than 10 days after the entry of the judgment, a memorandum of the items of his costs. . . . A party dissatisfied with the costs claimed may, within five (5) days after the service of a copy of the bill of costs, file a motion to have the same taxed . . ."

In *Coast Electric Service, Inc.* v. *Jensen*, 111 Cal.App. 124 [295 P. 346], it was held that the terms of section 1033 of the Code of Civil Procedure requiring the memorandum of costs to be served and filed not later than five days after the entry of the judgment are mandatory, and failure to comply therewith extinguishes the remedy to recover the costs and operates as a forfeiture of the right thereto; and if the memorandum be served or filed too late it will be stricken from the files on motion. As will be noted, that was a case of late filing and serving. To the same effect is *Holmes* v. *Anderson*, 90 Cal.App. 276 [265 P. 1010]. *Abney* v. *Belmont Country Club Properties*, 100 Cal.App. 12 [279 P. 829] and *Gale* v. *Dixon*, 91 Cal. App. 529 [267 P. 342] applied the same rule to a *premature filing* of the cost bill.

Witkin, volume 3, page 1918, section 36, recites that "this harsh view is rejected in later cases, which hold that 'too timely' filing is a *mere irregularity*, waived unless a motion is made to strike the cost bill." Citing *Combs* v. *Eberhard*

(1932), 120 Cal.App. 25, 31 [7 P.2d 338] where it was held that where the cost bill was filed on the same day as the findings and judgment, and some time previously the cost bill had been duly served on appellant, such service was but an irregularity and a judgment for costs was not void on its face. There, no motion to strike it was made and it was held that any objection thereto was waived. Also cited is *King* v. *Carroll* (1936), 11 Cal.App.2d 745, 749 [54 P.2d 730] to the same effect. Here, the only distinction from that case is that defendants did, on December 26, 1958, long after the time permitted by statute, file a notice to strike it.

In *San Francisco etc. School District* v. *Board of National Missions*, 129 Cal.App.2d 236 [276 P.2d 829], it was held that the requirement that the cost bill be filed within five days is not jurisdictional and the failure to file within the time limit can only be attacked as prescribed by law, which is a motion to tax (or strike) within the period prescribed by section 1033. See also *Davis Lumber Co.* v. *Hubbell*, 137 Cal.App.2d 148 [290 P.2d 33]; and *Eistrat* v. *Humiston*, 160 Cal.App.2d 89, 92 [324 P.2d 957].

We conclude that since the premature service of a copy of the memorandum of costs was a mere irregularity and did not render the judgment for costs void and since defendants did not file their motion until 25 days after such service and 17 days after entry of judgment, which included the costs, and nine days following service of notice of entry of judgment, which included such costs, the court was authorized in denying the motion. *Markart* v. *Zeimer*, 74 Cal.App. 152, 156 [239 P. 856]; *Bell* v. *Thompson*, 8 Cal.App. 483 [97 P. 158]; *Miller* v. *California Roofing Co.*, 55 Cal.App.2d 136, 146 [130 P.2d 740].

Judgment and order denying motion to strike cost bill affirmed.

Shepard, J., concurred.