[No. C010709. Third Dist. July 31, 1992.]

MICHAEL McGARITY et al., Plaintiffs and Appellants, v.
DEPARTMENT OF TRANSPORTATION, Defendant and Appellant.

[Opinion certified for partial publication.*]

*Pursuant to rule 976.1 of the California Rules of Court all portions of this opinion shall be published except Procedural Background and parts I, III, IV, and V of the Discussion.

## COUNSEL

Joe R. McCray and Roberta D. Perkins for Plaintiffs and Appellants.

Joseph A. Montoya, Ronald I. Harrison, George L. Cory and Gary A. Geren for Defendant and Appellant.

## OPINION

**SIMS, Acting P. J.**—Plaintiffs Michael McGarity, William Parks, and Dorothy Isenberg appeal from a judgment in favor of defendant State of California, Department of Transportation (the State), following jury trial of plaintiffs' claims for personal injury and wrongful death arising from a motor vehicle accident allegedly caused by a dangerous condition of public property.[1] On appeal, plaintiffs contend the trial court erred in (1) allowing a defense witness to violate an *in limine* order excluding evidence; (2) limiting plaintiffs' cross-examination of a defense expert witness; (3) submitting an improper special verdict form to the jury; and (4) submitting to the jury an improper question to clarify the verdict. Plaintiffs also contend that the evidence is insufficient to support the jury's special finding of lack of foreseeability and that foreseeability was established as a matter of law. The State cross-appeals from the trial court's order granting plaintiffs' motion to

---

[1] Other defendants were named in the complaints separately filed by plaintiffs, which were consolidated for trial. All defendants were dismissed before trial except General Motors (manufacturer of the accident vehicle) and the State. General Motors settled with plaintiffs after return of the verdict and is not a party to this appeal.

We granted plaintiffs' unopposed motion to augment the record on appeal to include the pleadings and other omitted items.

tax costs as to expert witness fees paid by the State in order to depose plaintiffs' designated experts. We will affirm the judgment and will affirm the order taxing costs.

## FACTUAL BACKGROUND

At about 7 p.m. on the night of November 21, 1986, plaintiff McGarity was driving a 1973 Chevrolet pickup southbound on State Route 45 in Yolo County, with decedent Myles Parks, the son of plaintiffs Parks and Isenberg, as his passenger. McGarity was unfamiliar with that road.

They encountered several curves in the road preceded by warning signs. At one point, Route 45 curves to the left at a 90° angle, just over a rise in the road. The curve warning sign that was supposed to be posted at that location was not posted at the time of the accident. Four reflective curve delineators marked the curve, whereas the CalTrans traffic manual calls for twelve.

Just before the curve, the truck hit a bump in the road, momentarily distracting McGarity's attention. The truck left the road, and traveled 185 feet before hitting a concrete irrigation watergate. The truck hurdled over the watergate, which scraped the underside of the vehicle, squashing the fuel tank "like a milk carton." The fuel ignited and engulfed the cab in flames. The truck came to rest at a point 94 feet from the watergate.

Both McGarity and Myles Parks suffered severe burns. Myles Parks later died of his burns.

Eyewitness David Charles testified he was driving behind the vehicle for about 15 miles before the accident site, over a stretch of road that included several curves. Charles himself was averaging 80 miles per hour yet did not close the gap between them. Expert witnesses estimated the truck's speed at 75 miles per hour when it left the road.

On the morning of the accident, CalTrans maintenance workers had conducted a routine inspection of the signs in the area. They repaired two signs within miles of the accident site but did not note any signs missing on their route. The sign that was supposed to be posted at the accident curve was found three days later, lying undamaged across the road from where it had been posted. There was a problem with vandalism of signs in the area.

## PROCEDURAL BACKGROUND*

*See footnote, *ante*, page 677.

## DISCUSSION

### I. *The In Limine Order\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. *Cross-examination of Expert Witness*

██ Plaintiffs contend the trial court erred in restricting their cross-examination of the State's accident reconstruction expert.

The State's expert, David Yoshida, estimated the vehicle's speed at more than 40 miles per hour, barrier equivalent velocity (BEV), which means an actual speed of 80 miles per hour.

Outside of the presence of the jury, the trial court heard argument regarding the State's objection to plaintiffs' counsel cross-examining Dr. Yoshida on the BEV issue with a crash test report apparently prepared by General Motors in a test crash at 30 miles per hour with a test truck of the same year and design but heavier than the accident vehicle. The State objected based on Evidence Code section 721, subdivision (b), (hereafter section 721(b)), which provides: "If a witness testifying as an expert testifies in the form of an opinion, he may not be cross-examined in regard to the content or tenor of any scientific, technical, or professional text, treatise, journal, *or similar publication* unless: [¶] (1) The witness referred to, considered, or relied upon such publication in arriving at or forming his opinion; or [¶] (2) Such publication has been admitted in evidence." (Italics added.)

It is apparently undisputed that the witness had not referred to, considered, or relied upon the General Motors crash test report in forming his opinion, nor had it been admitted into evidence.

Plaintiffs' attorney told the trial court he wanted "to inquire of this witness regarding whether that's the sort of thing that he's seen in the past in terms of measuring crush, and whether he knows from looking at this photograph the miles per hour that it took . . . to cause that crush, if he has an estimate. [¶] If you recall, the witness has testified that he made up his mind there was a 40-mile-an-hour barrier equivalent in this accident before he saw the Habberstad tests [about which the expert had testified]." "I would like to establish . . . that this is the kind of testing that he talks about when he's relying—that he's seen in his history. He told us that he's seen barrier testing, and he's seen pole-impact tests. [¶] And I'm going to ask him

---

*See footnote, *ante*, page 677.

whether this is the kind of test over his career he's seen as pictures and treati[s]es about it upon which he's relied upon to make his judgment about the barrier equivalent velocity in this case . . . . [¶] I want to give him the opportunity to look at this picture in this test and let the jury have the opportunity to decide whether there is more damage in the accident vehicle at—or less damage compared to that vehicle at 30.8."

The trial court sustained the State's objection.

Plaintiffs contend "similar publications" in section 721(b) means only formal publications for mass consumption, such as the "text, treatise, or journal" listed as examples in section 721(b). Since the General Motors crash test report was apparently not published for mass consumption, plaintiffs think section 721(b) is inapplicable. We disagree.

Plaintiffs cite *Genrich* v. *State of California* (1988) 202 Cal.App.3d 221 [248 Cal.Rptr. 303], which held that the trial court properly allowed a state highway design expert to be cross-examined regarding statistics contained in a Statewide Integrated Traffic Survey (SWITRS), a computerized accident data retrieval system storing highway accident data. (*Id.* at p. 225.) The State argued on appeal that the witness had not relied on the report, as required by section 721(b). Although the court said the report was not a "text, treatise or journal" within the meaning of section 721(b), the comment was dictum, because the court also said the State had not asserted this ground for objection below and had therefore waived the issue. (202 Cal.App.3d·at p. 231.)

The State cites *People* v. *Criscione* (1981) 125 Cal.App.3d 275 [177 Cal.Rptr. 899]. There, the defendant's state of mind was at issue, and the prosecutor cross-examined a defense psychiatrist about studies conducted by a nonwitness psychologist concerning diagnosis of persons faking mental illness. (*Id.* at pp. 284-285.) The appellate court found prosecutorial misconduct in the district attorney's insinuation to the jury that the tests were irrefutable. The court added that "it is error to permit the use of professional studies not relied upon by an expert in the formation of his opinion." (*Id.* at p. 286, citing section 721(b).) However, it is not clear whether the studies in *Criscione* were "unpublished" (as defined here by plaintiffs), given the witness's familiarity with them. (*Id.* at p. 284.)

In *National Steel Products Co.* v. *Superior Court* (1985) 164 Cal.App.3d 476 [210 Cal.Rptr. 535], not cited by the parties, section 721(b) was applied to an engineer's report similar to the crash test report at issue in this case. The report in *National Steel* was a technical engineering analysis of a metal building in New York, that had been prepared to assist counsel for a steel

manufacturer in a negligent construction action unrelated to the California lawsuit. No portion of the report was disclosed during the New York litigation, which settled before trial. (*Id.* at p. 482.) The California action involved similar claims against the steel manufacturer concerning a building in this state. (*Ibid.*) The manufacturer's California attorneys obtained the engineer's report from New York counsel, for background purposes, and retained the engineer as an expert in the California litigation. (*Ibid.*) The plaintiff sought discovery of the New York report. The appellate court held that any nonprivileged portions of the report were discoverable, because under section 721(b) the report could be used to cross-examine the engineer at trial if he considered his New York report in forming his opinion regarding the California litigation. (*Id.* at pp. 490-491.)

In none of the foregoing cases was there any discussion over the meaning of the term "similar publication" in section 721(b). However, the purpose of section 721(b) supports a broad construction of the term.

Thus, to counterbalance the broad scope of cross-examination of expert witnesses (Evid. Code, § 721, subd. (a)[3]), the purpose of section 721(b) is "to prevent an adverse party from getting before the trier of fact the *inadmissible hearsay* views of an *absent* expert, which may be *contrary* to the expert witness' opinion, through the device of cross-examining the expert witness regarding the absent expert's publication or report even though the testifying expert had *not* used or considered that publication or report in *any* way in arriving at or forming his opinion testimony." (2 Jefferson, Evidence Benchbook (2d ed. 1982) § 29.8, p. 1036, original italics.)

The Law Revision comment to Evidence Code section 721 notes that "a rule permitting cross-examination on technical treatises not considered by the expert witness would permit the cross-examiner to utilize this opportunity not for its ostensible purpose—to test the expert's opinion—but to bring before the trier of fact the opinions of absentee authors without the safeguard of cross-examination. Although the court would be required upon request to caution the jury that the statements read are not to be considered evidence of the truth of the propositions stated, there is a danger that at least some jurors might rely on the author's statements for this purpose. Yet, the statements in the text might be based on inadequate background research, might be subject to unexpressed qualifications that would be applicable to the case before the

---

[3]Section 721, subdivision (a), provides: "Subject to subdivision (b), a witness testifying as an expert may be cross-examined to the same extent as any other witness and, in addition, may be fully cross-examined as to (1) his qualifications, (2) the subject to which his expert testimony relates, and (3) the matter upon which his opinion is based and the reasons for his opinion."

court, or might be unreliable for some other reason that could be revealed if the author were subject to cross-examination." (Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1966 ed.) § 721, p. 56 [Deering's Ann. Evid. Code (1986 ed.) § 721, p. 355].)

Here, the record shows plaintiffs' attorney intended to use the report for the very purpose against which section 721(b) guards—to put hearsay opinion before the jury. We conclude section 721(b) applies to the General Motors crash test report.

■ Plaintiffs next contend use of the report would be proper because Dr. Yoshida "admitted his reliance on crash tests . . . ." However, testimony cited by plaintiffs shows only a reference to tests performed by another trial witness, Dr. Habberstad. That Dr. Yoshida had referred to the Habberstad tests does not open the door to cross-examination with tests of the same generic nature which the witness did not refer to, consider, or rely upon, and which had not been admitted into evidence.

■ Plaintiffs suggest the report was admissible for impeachment purposes. This contention is without merit.

In *People* v. *Visciotti* (1992) 2 Cal.4th 1 [5 Cal.Rptr.2d 495, 825 P.2d 388], the prosecutor cross-examined a defense psychologist about a study (the same study that was at issue in *Criscione*, *supra*, 125 Cal.App.3d 275), "with which the expert was not acquainted, asking questions that were assertions of fact or conclusions reached in that study, the import of which was that psychiatrists are unable to accurately diagnose schizophrenia and paranoia. The study itself was not introduced." (*Visciotti*, *supra*, 2 Cal.4th at pp. 80-81.) The Supreme Court held the questioning constituted prosecutorial misconduct. (*Ibid.*) "A party attacking the credibility of the expert may bring to the jury's attention material that is relevant to the issue of which the expert was unaware (*People* v. *Bell* [1989] 49 Cal.3d 502, 532 [262 Cal.Rptr. 1, 778 P.2d 129]), but that party may not by its questions testify regarding the content of that material." (*Visciotti*, *supra*, 2 Cal.4th at p. 81.)

Thus, a party may ask an opposing expert whether he or she is aware of material relevant to the subject matter of the expert's opinion but may not introduce evidence of the content of the material, unless the expert referred to, considered, or relied upon the material. This is consistent with section 721(b), which prohibits only cross-examination "in regard to the content or tenor" of the material.

Here, we question whether the General Motors crash test report would have any impeachment value, since Dr. Yoshida's unawareness of the report or failure to consider it would not reflect on his credibility or expertise. Nevertheless, assuming the report had impeachment value, plaintiffs' claim that they wanted to use the report to impeach Dr. Yoshida is belied by the record, which shows plaintiffs wished to question Dr. Yoshida regarding the content of the report and wanted the jury to evaluate the content of the report to compare the damage to the accident vehicle with the damage to the vehicle shown in the report. We therefore reject plaintiffs' contention that the report was admissible to impeach Dr. Yoshida.

We conclude section 721(b) supports exclusion of the General Motors crash test report.

There was no error in limitation of cross-examination of Dr. Yoshida.

III. - V.*

. . . . . . . . . . . . . . . . . . . . . . . . .

VI.   *The State's Cross-appeal*

The State cross-appeals from the trial court's order granting plaintiffs' motion to tax costs as to expert witness fees paid by the State in order to depose plaintiffs' designated experts. The State argues that since the costs of taking depositions are recoverable under Code of Civil Procedure section 1033.5, subdivision (a)(3),[7] and since a party deposing an opposing party's expert must pay the expert's witness fees (Code Civ. Proc., § 2034, subd. (i)), then the expert's fees are recoverable costs.

The State concedes case law goes against its position in that *Posey* v. *State of California* (1986) 180 Cal.App.3d 836 [225 Cal.Rptr. 830] held that expert deposition fees could not be recovered as costs. Nevertheless, the State

---

*See footnote, *ante*, page 677.
[7]Code of Civil Procedure section 1033.5, subdivision (a), provides in part: "The following items are allowable as costs under Section 1032 [prevailing party entitled to recover costs]: . . . (3) Taking, videotaping, and transcribing necessary depositions including an original and one copy of those taken by the claimant and one copy of depositions taken by the party against whom costs are allowed, and travel expenses to attend depositions."

argues, *Posey* no longer controls, because its holding was based on Government Code section 68092.5, which has since been amended to remove the language that these fees are not recoverable as costs.

Thus, before 1988, Government Code section 68092.5 provided that an expert witness whose deposition was required in a civil action was to receive "reasonable compensation for his or her entire time required to travel to and from . . . the place of taking such deposition . . . and while he or she is required to remain at such place pursuant to subpoena. The court may fix the compensation for such appearance, in addition to such witness fees otherwise allowed by law, at such amount as seems reasonable to the court, upon motion by any party to the action or by the person required to testify and such fees shall be paid by the party requiring such witness to attend, but *such fees shall not be allowable costs* or disbursements." (Stats. 1986, ch. 560, § 2, pp. 1982-1983, italics added.)

In 1988, the language "such fees shall not be allowable costs" was deleted and various other changes were made to the statute. (Stats. 1988, ch. 275, § 1, p. 971.) The statute now provides that the party requiring the deposition shall pay the expert's hourly or daily fee for the time consumed by the deposition, but the party designating the expert pays the expert's preparation and travel fees, unless otherwise determined by the court. (Gov. Code, § 68092.5, subd. (a).)

■ The State urges us to construe the amendment as an expression of legislative intent to allow recovery of expert deposition fees as costs. However, the State cites no legislative history or other authority to support its position. As plaintiffs note, the wording may have been deleted from Government Code section 68092.5 as unnecessary, in light of Code of Civil Procedure section 1033.5, subdivision (b)(1), which provides: "The following items are not allowable as costs, except when expressly authorized by law: [¶] (1) Fees of experts not ordered by the court."

We conclude the State's recovery of expert witness fees is precluded by the plain language of Code of Civil Procedure section 1033.5, subdivision (b)(1). (Cf. *Beasley* v. *Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1419 [1 Cal.Rptr.2d 459].)

The State's cross-appeal is without merit.

## DISPOSITION

The judgment and the order taxing costs are affirmed. Each party shall bear its own costs on appeal.

Davis, J., and Scoland, J., concurred.

The petition of plaintiffs and appellants for review by the Supreme Court was denied October 21, 1992.