[No. D017060. Fourth Dist., Div. One. May 12, 1994.]

PAMELA W., Plaintiff and Appellant, v.
MARK MILLSOM, SR., et al., Defendants and Respondents.

## COUNSEL

Carl A. Grubb and Frank E. Noble for Plaintiff and Appellant.

Ault, Deuprey, Jones & Gorman, Graham S. P. Hollis, Kenneth C. Rickelman, Robie & Matthai, James R. Robie, Kyle Kveton, Pamela E. Dunn, Allison H. Hout and Joseph J. Barr, Jr., for Defendants and Respondents.

Hill, Genson, Even, Crandall & Wade and Edwin B. Brown as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

NARES, J.—Pamela W. (Pamela) appeals from entry of summary judgment terminating her suit against her landlords and the condominium association governing the four-unit Pacific Beach complex in which she lived. She asserts the trial court in this case improperly determined the defendants were under no duty to have taken security measures which might have prevented the rapist who assaulted her in her home from having accomplished his crime. The trial judge found that the assault and rape of Pamela were not foreseeable to the degree which would have imposed a legal duty upon the defendants. Pamela asserts this determination was a question of fact, not law, and also that it was erroneously made. Under controlling authority, we reject these challenges, and affirm the judgment.

### FACTS AND PROCEDURE

Beginning on the first of March 1989, Pamela leased from defendants Mark Millsom, Sr., Sharon Millsom, and Mark Millsom, Jr. (collectively, the Millsoms), one condominium unit of a four-unit, two-building project known as Sand Dollar Court, located on Reed Street in Pacific Beach. The units are governed by the defendant Sand Dollar Court Owners Association (Sand Dollar).

Pamela and defendants all believed the neighborhood was safe. Neither Pamela nor others were aware of specific criminal acts in the vicinity of her condominium, with the exception of a daytime burglary of the unit above hers which occurred in the beginning of October 1989.

Early in the morning hours of October 30, 1989, however, an assailant gained entrance (possibly through a window) to Pamela's unit. The intruder raped Pamela, and during the assault he told her (calling her by her name) he had been watching her.

Pamela sued her landlords, the condominium association, and others, alleging as a first cause of action negligence, as the second cause of action a

breach of the implied warranty of habitability, and as a third cause of action, nuisance.[1] Answers to the complaint were filed.

The Millsoms and Sand Dollar later moved for summary judgment on the basis (among others) that, upon the undisputed facts, as a matter of law they owed no duty to Pamela to have protected her from the harm which had occurred, because that harm was not reasonably foreseeable in the absence of the occurrence of prior similar assaultive incidents on the premises.[2]

Counsel for Pamela, although purporting to dispute some of the facts relied upon by Sand Dollar, essentially argued the relevance or the legal significance of the undisputed facts, rather than their existence. The opposing papers did note Sand Dollar's no-duty argument was "whether they had notice of facts which would cause them to reasonably anticipate the acts of a third party. SAND DOLLAR bases their contention on the fact that they did not have notice of any prior assaults and were not aware of any other similar acts."

Counsel for Pamela argued the fact no prior assault "or prior similar incident had occurred does not render the wrongful conduct unforseeable. Forseeability is a question of fact to be determined by the totality of the circumstances." Counsel also pointed out that "[a] significant fact which Defendant MILLSOMS and Defendant SAND DOLLAR keep overlooking is that the property in question is located in Pacific Beach, a noted high crime area."

---

[1] As plaintiff admits, the cause of action for a breach of the implied warranty of habitability necessarily depends, as does the negligence count, upon a finding of forseeability, while the "nuisance" pleaded in this case also requires negligent conduct. Thus, the entire complaint stands or falls with the determination of the negligence cause of action, and in light of our disposition of that count, we will not further refer to the subsidiary breach-of-warranty and nuisance pleadings.

[2] Sand Dollar also cited our decision in *Lopez* v. *McDonald's Corp.* (1987) 193 Cal.App.3d 495, 516 [238 Cal.Rptr. 436], where we stated that (in contrast to measures involved in "hardening a target" against property crimes by such means, for example, as the improved security for windows cited by Pamela) with respect to violent criminal conduct that "without infringing upon the issue of causation, what protective measures should be pursued to protect against . . . assault truly defy exact delineation, because how can one know which measures will be effective against a degenerate, a psychopath or a psychotic." (*Id.* at p. 512.) In like fashion, there is no assurance better physical security would have prevented the crime in this case, because no one really knows what measures might be required to deter a rapist who, unobserved, watches and stalks his victim, as here.

In the *Lopez* case, the lead opinion addressed both duty and causation (193 Cal.App.3d at pp. 504-517), while one of the other justices concurred as to each point separately (*id.* at p. 517 (conc. opn. of Butler, J.)). While this point on causation also might be dispositive given the facts of this case, because of our resolution of the duty issue, we do not pursue the question on causation, as it is unnecessary to our determination of this cause.

In a telephonic ruling on February 14, 1992, the trial court tentatively ruled that "[d]efendants Sand Dollar Court Owner's [*sic*] Assn. and the Millsoms' motions for summary judgment are granted. Defendants have no duty to protect plaintiff from third party criminal conduct in the facts of this case." Oral argument was continued to February 21, 1992.

At oral argument counsel for Pamela characterized the moving parties' position essentially as being that "[t]here was no notice of any prior rapes in the area. There was no knowledge that the area was a high crime area, and there was no notice from Miss W[.] of any problems within her particular unit."

Counsel for Pamela thus summed up the basis for the defendants' contention they owed no duty as being "that, without notice or reason to know of criminal acts of third parties, the conduct is unforseeable, and, therefore, no duty [is] owed." The trial judge then pointed out to counsel that (contrary to Pamela's position) "[i]n determining whether a duty exists, foreseeability is an issue at law."

The court observed that the issue of forseeability had been the "one I looked at, yes." Finding that the assault and rape of Pamela had *not* been foreseeable, the court confirmed the previous telephonic grant of summary judgment in favor of defendants Sand Dollar and the Millsoms.[3]

Thereafter Pamela filed voluminous papers in support of a motion for reconsideration, which was denied. The Millsoms thereafter filed a costs memorandum which claimed $15,141.68 in recoverable costs. Pamela filed a motion to (1) strike the costs memorandum as prematurely filed, (2) disallow expert witness fees, and (3) disallow other items as not reasonably necessary.

Pamela's motion to strike the entire costs memorandum was denied, but her motion to tax costs was granted in appropriate part. The costs ultimately awarded were reduced by $2,700, for a final costs award of $12,441.68.

---

[3]The court's precise wording was as follows: "This was a tragic case, and my heart goes out to the plaintiff. But I don't believe that the assault and the rape of the plaintiff was foreseeable. No one knew that additional security measures were needed. ¶ I also think it's one of those cases where—I hate to say it's too great a burden, but that's really the way I feel. We're talking about landlords. We're talking about a couple who rented their apartment out. And nobody knew that this was a problem. ¶ The telephonic [ruling] is confirmed."

Counsel for appellant asserts the foregoing language demonstrates that "[t]he Trial Court Judge used her personal feelings in determining duty" rather than utilizing a legal standard. The point is without merit. While the trial judge may have been refreshingly candid about her view of the case, there is no doubt that her view was based upon her analysis of the law and the facts, rather than her "feelings." We will not dignify this point with further discussion.

## Standard of Review

■ "An action in negligence requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff. [Citations.] On review of a summary judgment in favor of the defendant, we review the record de novo to determine whether the defendant has conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)" (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673-674 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

In the proceedings below the trial court determined the first element, duty owed the plaintiff, was not present on the particular facts of this case. Contrary to the position taken below and in this court by counsel for Pamela, this was a proper determination for the court to make, rather than a jury. ■ As we stated in *Lopez* v. *McDonald's Corp., supra,* 193 Cal.App.3d at page 506, " 'The question of "duty" is decided by the court, not the jury. [Citations.]' (*Ballard* v. *Uribe* [1986] 41 Cal. 3d [564,] 572, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624].).)" Further, "[t]he existence of a duty is a question of law for the court. [Citations.] Accordingly, we determine de novo the existence and scope of the duty owed by [defendants] to [plaintiff]." (*Ann M.* v. *Pacific Plaza Shopping Center, supra,* 6 Cal.4th at p. 674.) Finally, "[f]oreseeability, when analyzed to determine the existence or scope of a duty, is a question of law to be decided by the court. (*Ballard* v. *Uribe* [*supra,*] 41 Cal.3d [at pp.] 572-573, fn. 6; *Lopez* v. *McDonald's Corp., supra,* 193 Cal.App.3d at p. 507, fn. 6." (*Id.* at p. 678.)

Under this authority, we review de novo the question of the forseeability of the criminal conduct in this case as it bears on the question of whether the Millsom and Sand Dollar defendants did, or did not, owe a duty to Pamela to prevent the crime.[4]

## Discussion

Counsel for Pamela in the appellant's opening brief makes what appear to be five separate substantive arguments on appeal, and two separately stated challenges to the award of costs below. There are two respondent's briefs (Sand Dollar's and the Millsoms'), and an amicus curiae brief in support of respondent Sand Dollar. Counsel for Pamela has filed one reply brief to the

---

[4]As noted above (fn. 2, *ante*), we do not, on the facts of this case, have occasion to address the issue of causation.

two respondents' briefs and a separate reply to the amicus curiae brief. Finally, Sand Dollar sought and obtained permission to file also a supplemental brief, and plaintiff was permitted to respond thereto.

While the briefing in this case has been quite complex, we do not believe the issues now before us remain so. As all of the parties recognize, there is recent Supreme Court authority on the issue before us. In *Ann M.* v. *Pacific Plaza Shopping Center, supra*, 6 Cal.4th 666, the plaintiff was an employee of a business in the Pacific Plaza shopping center. "Shortly after Ann M. opened the store, a man she had never seen walked in . . . . The man, who was armed with a knife, went behind the counter, raped Ann M., robbed the store, and fled." (*Id.* at p. 671.)

Thus *Ann M.*, like this case, concerns whether a landowner has a duty to a tenant to take measures to prevent a criminal assault. In our view, the *Ann M.* authority fully supports the ruling below, and we thus despite the wide scope of the briefing restrict our discussion to the issues of (1) whether respondents owed plaintiff a duty (de novo review) and (2) whether the award of costs was proper, an issue on which we defer in accordance with normal practice to the trial court's exercise of discretion.

## I. Duty

■ We begin by noting that in any analysis of foreseeability, the emphasis must be on the specific, rather than more general, facts of which a defendant was or should have been aware. That is, there is little utility in evidence that, for example, the Pacific Beach area of San Diego is a "high crime area." As our Supreme Court has noted on this point, "[u]nfortunately, random, violent crime is endemic in today's society. It is difficult, if not impossible, to envision any locale open to the public where the occurrence of violent crime seems improbable." (*Ann M.* v. *Pacific Plaza Shopping Center, supra*, 6 Cal.4th at p. 678.)

Also relevant are the observations of another court: "No one really knows why people commit crime, hence no one really knows what is 'adequate' deterrence in any given situation. While bright lights [or in this case, an alarm] may deter some, they will not deter all. Some persons cannot be deterred by anything short of impenetrable walls and armed guards." (*7735 Hollywood Blvd. Venture* v. *Superior Court* (1981) 116 Cal.App.3d 901, 905 [172 Cal.Rptr. 528].)[5]

The major distinction between *Ann M.* and this case is the nature of the corrective measures which, it is urged, the various defendants ought to have

---

[5]In the case of *Frances T.* v. *Village Green Owners Assn.* (1986) 42 Cal.3d 490, 502-503 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447], our Supreme Court stated that *7735*

employed. In *Ann M.*, the question was "whether the scope of the duty owed by the owner of the shopping center to maintain common areas within its possession and control in a reasonably safe condition includes providing security guards in those areas." (*Ann M.* v. *Pacific Plaza Shopping Center, supra*, 6 Cal.4th at p. 670.) Here, in contrast, the corrective measures urged only extend to a suggested need for improving the physical security of the premises which Pamela rented from defendants.

 Plaintiff here argues that the assertedly minimal nature of the proposed burden justifies ready imposition of the duty. It is of course true that ". . . the scope of a landlord's duty to provide protection from foreseeable third party crime . . . is determined in part by balancing the forseeability of the harm against the burden of the duty to be imposed." (*Ann M.* v. *Pacific Plaza Shopping Center, supra*, 6 Cal.4th at p. 678.) But what may be a minimal burden for the owner of a large apartment building or a shopping center may also be, in the case of the owner of a single unit in a four-unit project, a significant burden indeed.

That is, the burden of providing security guards in the case of a shopping center is likely no more onerous than the burden of providing greatly increased physical security for the Millsoms' condominium unit. Thus, when this case is compared with *Ann M.*, the foreseeability in each instance of any third party criminal activity should be approximately comparable in order to impose a burden of additional security, whether human or physical.

 With this essential comparability in mind, we turn again to *Ann M.*: "While there may be circumstances where the [provision of substantial additional security] will be required to satisfy a landowner's duty of care, such action will rarely, if ever, be found to be a 'minimal burden.' . . . Moreover, the obligation to provide [security measures] adequate to deter criminal conduct is not well defined. . . . For these reasons, we conclude that a high degree of foreseeability is required in order to find that the scope of a landlord's duty of care includes [adequate measures to prevent the harm]. We further conclude that *the requisite degree of foreseeability rarely,*

---

*Hollywood Blvd. Venture*, while factually distinguishable from *Frances T.*, was also "legally questionable because in *Issacs* v. *Huntington Memorial Hospital* [1985] 38 Cal.3d 112 [211 Cal.Rptr. 356, 695 P.2d 653], we explicitly rejected the 'rigidified forseeability concept' . . . and adopted [a rule] that ' "[f]orseeability does not require prior identical or even similar events." ' (38 Cal.3d at p. 127.)" In *Ann M.* v. *Pacific Plaza Shopping Center, supra*, 6 Cal.4th at page 679, the *7735 Hollywood Blvd. Venture* case is both quoted and cited with apparent approval, however, in the process of "refinement of the rule enunciated in *Isaacs, supra.*" (*Ann M.* v. *Pacific Plaza Shopping Center, supra*, 6 Cal.4th at p. 678.) We take this as evidence that the quoted observations from *7735 Hollywood Blvd. Venture*, cited also by this court in *Lopez* v. *McDonald's Corp., supra*, 193 Cal.App.3d at page 516, remain valid.

*if ever, can be proven in the absence of prior similar incidents of violent crime on the landowner's premises." (Ann M. v. Pacific Plaza Shopping Center, supra,* 6 Cal.4th at p. 679, italics added, fn. omitted.)

▇ If a "high degree of foreseeability is required" in order to find a shopping center landlord's duty of care includes hiring of security guards (*Ann M.* v. *Pacific Plaza Shopping Center, supra,* 6 Cal.4th at p. 679), then necessarily a similarly "high degree of foreseeability" must be required to find in this case that either the individual landlord or the four-member condominium association has a duty of care which would include "hardening" of the rented premises to become essentially entry-proof.

Given the facts as set out in the pleadings and motion papers filed below, one matter is undisputed, and controlling: neither the Millsoms nor Sand Dollar had any particularized information concerning "prior similar incidents of violent crime on the landowner's premises." Given this, a final paraphrasing of the *Ann M.* holding is dispositive: "Turning to the facts of the case before us, we conclude that violent criminal assaults were not sufficiently foreseeable to impose a duty upon [defendants] to provide [physical security making the premises entry-proof]. [Citation.] First, [none of the defendants had] notice of prior similar incidents occurring on the premises. [Pamela] alleges that [a burglary had occurred in another unit of the complex] . . . . [E]ven assuming that [defendants] had notice of th[is] incident[ ], [it was] not similar [ ] to the violent assault that [Pamela] suffered. Similarly, none of the remaining evidence presented by [Pamela] is sufficiently compelling to establish the high degree of foreseeability necessary to impose upon [defendants] a duty to provide [extraordinary physical security measures]. Neither the evidence regarding the [burglary of the other unit] nor the evidence of the statistical crime rate of the surrounding area is of a type sufficient to satisfy this burden."[6] (*Ann M.* v. *Pacific Plaza Shopping Center, supra,* 6 Cal.4th at pp. 679-680.)

There is another and even more fundamental reason why the judgment was proper. On the facts of this case, involving what appeared to be an attack by someone who had stalked the victim, it is wholly unclear what level of security short of armed guards could have been fully relied upon to *prevent* the crime. If the criminal activity in a shopping plaza did not give rise to a duty to provide such a level of crime prevention, necessarily neither the landlord nor the four-member condominium association in this case could reasonably be placed under a duty to have provided a level of security likely to have prevented the attack.

---

[6]Thus in this case testimony from police officers about rapes in the general area of the condominiums would not suffice to demonstrate that the defendants were or should have been on notice to guard against this sort of offense.

We must also note that the same result would obtain in this case even absent the *Ann M.* decision. The leading case authority which does support liability by others, such as defendants here, for a rape committed in a condominium unit is *Frances T.* v. *Village Green Owners Assn., supra,* 42 Cal.3d at page 503. There, however, the following factual bases of liability were pleaded:

"The facts alleged here, if proven, demonstrate defendant's awareness of the need for additional lighting and of the fact that lighting could aid in deterring criminal conduct, especially break-ins. . . . [T]he Association was on notice that crimes were being committed against the Project's residents. Correspondence from plaintiff and other residents of her court, along with the articles in the Project's newsletter, demonstrate affirmatively that defendant was aware of the link between the lack of lighting and crime.

"Plaintiff's unit had, in fact, been recently burglarized and defendant knew this. . . .

"Thus, plaintiff has alleged facts sufficient to show the existence of a duty, that defendant may have breached that duty of care by failing to respond in a timely manner to the need for additional lighting and by ordering her to disconnect her additional lights, and that this negligence—if established—was the legal cause of her injuries." (42 Cal.3d at p. 503.)

The distinctions between *Frances T.* and this case are many and of great significance. Most importantly, the central point in *Frances T.* was the knowledge on the part of defendants, which knowledge required them to have foreseen the probability of harm which befell the plaintiff there. In this case, absent such prior knowledge of a likelihood of harm, there was no basis for holding the defendants to a duty to have prevented such harm. Again, the trial court correctly determined the issue of duty in this case, and for this reason the judgment must be affirmed.

## II. COSTS

■ Plaintiff also sought by motion to strike certain of the costs claimed by the Millsom defendants. The general basis for the motion was that (1) the costs memorandum had been filed prematurely, and thus should be struck, and (2) some of the discovery done by the Millsoms prior to the grant of the summary judgment motion was unnecessary, and had only been "incurred substantially as a result of their conducting late discovery and bringing their summary judgment motion on the last possible day."

The Millsoms replied with a memorandum supporting their claimed costs, and plaintiff again countered with a reply claiming that (1) the cost bill should be struck and (2) some costs were not necessary. On May 1, 1992, the trial court issued a telephonic ruling, denying plaintiff's motion to strike the cost memorandum, but reducing costs awarded by $2,700. On this appeal plaintiff continues both arguments which were rejected by the trial court. We, in turn, reject them also.

As to the premature filing, counsel for Pamela relies upon *Pioneer Title Ins. Co.* v. *Guttman* (1959) 175 Cal.App.2d 116, 121-122 [345 P.2d 577], to argue that premature filing requires striking the cost memorandum. The case is unhelpful, as it concerns a matter whose governing statutes have been since amended (see, e.g., *Lange* v. *Fisher* (1983) 146 Cal.App.3d 113, 115-118 [194 Cal.Rptr. 517]; 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 121, pp. 548-549) and then repealed (Stats. 1986, ch. 377, § 11, p. 1579; 7 Witkin, Cal. Procedure (1994 pocket supp.) Judgment, §§ 118-121 pp. 141-143) and not since judicially construed.

In any event, even the wholly outdated cases cited by counsel have treated premature filing of a cost memorandum as a mere irregularity at best, and we have been offered no reason to impose a contrary rule. In the absence of any possibility that plaintiff was prejudiced in any way by the timing of the filing of the cost memorandum, we reject this argument.

As to whether the items allowed were proper, once more there is no basis demonstrated to us which would support a finding that the sound discretion of the trial court was abused in the award of costs below. While initially the costs claimed included expert witness fees which are not recoverable,[7] this claim was later retracted, and the costs finally awarded were thus reduced substantially, with the court reducing the claim by $2,700 for nonrecoverable expert's fees.

Those costs which were allowed were, in the opinion of the trial judge (if not plaintiff's counsel), costs which were in fact reasonably "necessary" to the conduct of the litigation, rather than "merely convenient or beneficial to its preparation." (Code Civ. Proc., § 1033.5, subd. (c)(2).) No reason has been advanced to us which would support any contrary finding, and we thus reject plaintiff's challenge to the costs which were awarded below.

---

[7]See, e.g., Government Code section 68092.5, Code of Civil Procedure section 1033.5, subdivision (b)(1), and *McGarity* v. *Department of Transportation* (1992) 8 Cal.App.4th 677, 685-686 [10 Cal.Rptr.2d 344].

## DISPOSITION

The judgment is affirmed. Respondents the Millsoms and Sand Dollar to recover costs on appeal.

Todd, Acting P. J., and Huffman, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 10, 1994.