Filed 6/4/24  Easley v. Herd CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DARNELL EASLEY et al., | B326983 |
| Plaintiffs and Appellants, | Los Angeles County Super. Ct. No. 20STCV36887 |
| v. | |
| ARDIS L. HERD, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William A. Crowfoot, Judge.  Affirmed.

First Law Group and Eric A. Forstrom for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Corinne C. Bertsche; Law Offices of Scott C. Stratman and Lorin D. Snyder for Defendant and Respondent.

———————————

Darnell Easley was shot three times in a seemingly random attack while he was socializing in his neighbor's garage. Easley and his wife, Shelita Walker, sued the neighbor, Ardis Herd, alleging he was negligent for failing to close the door of the garage completely while guests were socializing in it. The trial court granted Herd's motion for summary judgment, concluding Herd did not owe a duty of care because the shooting was not foreseeable. We agree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Applying the standard of review for motions for summary judgment, the following facts are either undisputed or presented in the light most favorable to the parties opposing summary judgment, Easley and Walker. (See *Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 342 (*Arteaga*).)

### 1. *The shooting*

Easley and Herd were friends and neighbors. Herd had lived in the same house since the 1970s. Easley had recently moved a couple of houses down the street from Herd. Before that, Easley lived a few streets away. Herd, who is older than Easley, described their relationship as being akin to that of a father and son.

Easley went over to Herd's house at 11:30 p.m. on September 26, 2018. Herd and his nephew were in the garage watching television when Easley arrived. Herd opened the garage door to let Easley inside. He then closed the door partway, leaving a three-foot gap between the ground and the bottom of the garage door. Easley, Herd, and Herd's nephew continued to socialize in the garage.

About 15 or 20 minutes after Easley arrived, Herd heard the sound of a gun cocking outside the garage followed

2

by four gunshots. Easley was struck with three bullets in his buttock, front pelvic region, and thigh. Herd leaned over in his chair and saw a person's legs. The person was standing about three to five feet away from Herd on the other side of the garage door. After the person fled, Herd opened the garage door completely and waited with Easley for the paramedics and police to arrive. Easley survived his injuries.

## 2. *Plaintiffs' action*

In September 2020, Easley and his wife, Shelita Walker, (together, Plaintiffs) filed a complaint against Herd for claims arising out of the shooting. Their operative complaint asserted causes of action for premises liability, general negligence, and loss of consortium.

Herd moved for summary judgment on the grounds he had no duty to prevent the incident and the shooting was the intervening cause of Easley's injuries. In support of his motion, Herd submitted undisputed evidence there had been no other recent emergency calls related to shootings into inhabited dwellings in the reporting district in which his house was located, or in a neighboring reporting district.

In opposition to the motion, Plaintiffs argued Herd owed them a duty of care, which he breached by leaving his garage door open while Easley was visiting. Plaintiffs submitted evidence that, during a social gathering at Herd's garage sometime before the shooting, Easley heard someone "blurt[ ] out" that Herd should close his garage door because it was not safe.

Plaintiffs also submitted excerpts from Herd's deposition in which he described his neighborhood as being dangerous. According to Herd, there were burglaries and gangs in the

3

neighborhood, and he had heard gunshots a couple times a week for the past 15 or 20 years.  Herd also described the security features of his home, including "a cage around the front door, the front porch," "bar doors at the back door," and "bar doors on the side entrance of the garage."  Herd said he did not have bars on his windows, but most of his neighbors did.

On the claims for premises liability and negligence, the court determined Plaintiffs could not establish duty or causation.  The court reasoned it was unforeseeable that, "by not closing the garage door completely, someone would shoot inside the garage or otherwise attempt to harm someone inside the garage."  The court noted it was undisputed there had been no reports of prior shootings at the house or into other inhabited dwellings in the reporting district.  The court also determined the loss of consortium claim failed because it was dependent on Plaintiffs' other claims.  Accordingly, the court granted Herd's motion for summary judgment.

The court entered judgment in Herd's favor and awarded him his costs of suit.  Plaintiffs timely appealed.

## DISCUSSION

### 1.    *Standard of Review*

Summary judgment is proper when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  "In reviewing an order granting summary judgment, we exercise our independent judgment, applying the same analysis as the trial court to determine 'whether the moving party established undisputed facts that negate the opposing party's claim or state a complete defense.' " (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 208.)  In conducting this analysis, we strictly

construe the moving party's evidence, while liberally construing the evidence offered in opposition, and we accept as undisputed facts only those parts of the moving party's evidence that are not contradicted by the evidence of the opposing party. (*Arteaga, supra,* 163 Cal.App.4th at p. 342.)

## 2.    *Herd did not owe a duty of care*

Plaintiffs argue the trial court erred in granting Herd's motion for summary judgment on the ground he owed no duty to Easley. According to Plaintiffs, Herd owed Easley a duty of care because it was foreseeable that someone might try to shoot guests in his garage. By failing to close his garage door completely, they argue, Herd created the opportunity for the shooter to commit the criminal act resulting in their injuries.

The elements of Plaintiffs' causes of action for premises liability and negligence are the same: (1) a legal duty of care; (2) a breach of that duty; and (3) an injury proximately caused by that breach. (*Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1207.) The existence of a duty is a question of law that courts resolve. (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213 (*Brown*).)

As a general rule, a defendant owes a duty of care to " 'all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous.' " (*Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 434–435.) To determine whether a duty exists in an ordinary negligence case, courts evaluate "whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 572, fn. 6.)

5

"As a general matter there is no duty to act to protect others from the conduct of third parties." (*Morris v. De La Torre* (2005) 36 Cal.4th 260, 269.) However, a duty may arise where the parties are in a " 'special relationship' " with one another.[1] (*Brown, supra,* 11 Cal.5th at p. 215.) Where there is a special relationship, one party may owe "a duty to undertake 'reasonable steps to secure common areas against foreseeable criminal acts of third parties that [were] likely to occur in the absence of such precautionary measures.' " (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 244 (*Delgado*).)

Courts analyze the duty issue somewhat differently where, as here, the injury was caused by a third-party criminal act. (See *Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1149–1150 (*Wiener*).) Courts employ a sliding-scale approach that balances the foreseeability of the criminal act against the burden of preventing future harm. (*Id.* at pp. 1146–1147.) Where the burden of preventing future harm is great—such as providing guards, bright lighting, cameras, or stronger fencing—"heightened foreseeability" is required. (*Delgado, supra*, 36 Cal.4th at p. 243, fn. 24.) Heightened foreseeability typically is shown by evidence of "prior similar criminal incidents." (*Ibid.*) In contrast, where the harm could be prevented with minimal burden, only "reasonable foreseeability" is required. (*Ibid.*) A criminal act is reasonably foreseeable "if its occurrence is likely enough in modern daily life that

---

[1]     Plaintiffs and Herd do not meaningfully dispute they were in some sort of a "special relationship," presumably as a landowner and guest. For the sake of argument, we will assume they were.

reasonable people would guard against it." (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 538 (*Melton*).)

*Wiener, supra*, 32 Cal.4th 1138 is instructive. In that case, a man deliberately drove his car through a fence and onto a day care center playground, killing two children. (*Id*. at pp. 1142–1143.) The children's parents sued the day care center and its property owner, asserting the defendants were negligent because they knew the fence was insufficient to protect the children from errant vehicles. In support of their claims, the parents presented evidence of a "freak accident" from several years earlier, in which an unmanned mail truck drove through the fence. (*Ibid*.) The Court of Appeal concluded the defendants had a duty to erect a stronger fence because it was foreseeable that an errant driver might drive through the fence accidentally. (*Id*. at p. 1145.)

The California Supreme Court reversed. The high court explained the Court of Appeal erred by analyzing the issue as though it were an ordinary negligence case. As a result, the lower court improperly focused on the foreseeability of the kind of harm the children suffered—being struck by a vehicle driven on the playground—rather than the foreseeability of the criminal act itself. (*Wiener, supra*, 32 Cal.4th at pp. 1148–1149, 1151.)

After balancing the relevant factors under the proper standard, the Supreme Court concluded the defendants did not have a duty of care to take measures to prevent the children's injuries. The court emphasized the lack of evidence of "prior similar criminal acts, or even any indication of prior criminal acts or intrusions of any type in the surrounding businesses." (*Wiener, supra*, 32 Cal.4th at pp. 1150–1151.) Absent that type

7

of evidence, the court explained, "the foreseeability of a perpetrator's committing premeditated murder against the children was impossible to anticipate, and the particular criminal conduct so outrageous and bizarre, that it could not have been anticipated under any circumstances." (*Id*. at p. 1150.)

Here, too, the foreseeability of the criminal act that resulted in Easley's injuries was impossible to anticipate. Easley denied knowing the identity of the shooter, and Plaintiffs presented no evidence of the shooter's motive. Nor did they present evidence to suggest the shooting was in furtherance of some other crime, such as a burglary or robbery. Instead, on the record before us, it appears the gunman was simply roaming the neighborhood looking for a random victim to shoot.

The record is entirely devoid of evidence that would have led Herd to anticipate such a random and senseless act of violence. Plaintiffs presented no evidence of similar violent acts occurring at or near Herd's home. In contrast, Herd presented undisputed evidence that in 2018—the year of the shooting—there had been no other reports of shootings into inhabited dwellings, either in the reporting district where Herd's house was located or in a neighboring reporting district.

Given the bizarre and random nature of the shooting, and the lack of any past incidents even remotely resembling it, the criminal act giving rise to Easley's injuries could not have been anticipated under any circumstances. Because the act was entirely unforeseeable, even assuming the burden of preventing the harm was minimal, the balance weighs against imposing a legal duty on Herd. (See *Wiener, supra,* 32 Cal.4th at pp. 1148, 1150–1151.)

Plaintiffs argue they presented sufficient evidence showing it was foreseeable someone might shoot into Herd's garage or otherwise try to harm one of his guests.  They point to evidence that Herd was aware of regular burglaries in the area and heard gunshots " 'a couple times a week' " within a few blocks of his home.  They also point to evidence that Herd had a " 'cage around [his] front door,' " a " 'bar[red]' " back door, and " 'bar[red] doors' " on the side entrance to the garage.  According to Plaintiffs, this evidence made it obvious "criminals were 'afoot' " in the neighborhood and "waiting for . . . [an] opportunity" to shoot someone.

In making these arguments, Plaintiffs overlook that, when considering whether third-party criminal acts were foreseeable, " 'the emphasis must be on the specific, rather than more general, facts of which a defendant was or should have been aware.' " (*Melton, supra*, 183 Cal.App.4th at p. 536.)  Therefore, it is not enough to show Herd's neighborhood was dangerous or that crime rates were high.  (See *Pamela W. v. Millsom*, 25 Cal.App.4th 950, 957 [when determining whether a criminal act was foreseeable, "there is little utility in evidence that . . . the Pacific Beach area of San Diego is a 'high crime area' "].)  Instead, the evidence must show the specific criminal conduct giving rise to the injuries—in this case, a deliberate shooting of a random victim inside a garage—was foreseeable.  (See, e.g., *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1190–1191, disapproved of on other grounds by *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527, fn. 5 [prior purse snatchings and bank robberies, and the "statistical crime rate" of the area surrounding a parking garage did not establish foreseeability of a sexual assault]; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 679–680,

9

disapproved of on other grounds by *Reid*, at p. 527, fn. 5 [evidence of prior assaults and robberies did not establish foreseeability of a rape].)

None of Plaintiffs' evidence would have rendered foreseeable the type of criminal activity at issue in the case. The bars on Herd's doors and the frequency of burglaries in the area suggest it was foreseeable a criminal might attempt to break and enter Herd's home. However, breaking and entering is not inherently violent, and there is no obvious link between that type of crime and the type of crime that resulted in Easley's injuries.

Similarly, absent more details about the circumstances of the past shootings, they say nothing about the foreseeability of a deliberate shooting at one of Herd's houseguests. At most, their frequency suggests guests were at risk of being struck by a stray bullet, which is not what happened here. In any event, the chance of being struck by a stray bullet while inside a garage is so exceedingly small, it also cannot be the basis for imposing a duty of care on Herd.

Our conclusion finds further support in Easley's lack of action the night of the shooting. The record shows Easley had lived in the same neighborhood as Herd for many years and had recently moved into a house only two doors away. Therefore, it is reasonable to assume Easley was aware of the neighborhood's frequent gunshots, gang activity, and burglaries, as well as the visible security features of Herd's home. Despite this knowledge, Easley did not ask Herd to close the garage door or take any other precautionary measures the night of

10

the shooting.  His failure to do so belies Plaintiffs' contention the shooting was in any way foreseeable.[2]

## DISPOSITION

We affirm the judgment.  Ardis L. Herd is awarded his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:


LAVIN, Acting P. J.


ADAMS, J.

---

[2]     Plaintiffs' claim for loss of consortium is derivative of, and dependent on, their negligence and premises liability claims.  Because the latter claims are not viable, their loss of consortium claim fails as well.  (See *Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 746 [a "cause of action for loss of consortium is, by its nature, dependent on the existence of a cause of action for tortious injury to a spouse"].)

11