Filed 9/23/13  Hernandez v. Fusion Food & Boba Cafe CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BRIAN HERNANDEZ, | D060875 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2010-00090086-CU-PO-CTL) |
| FUSION FOOD & BOBA CAFE et al. | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed.

Manahan, Flashman & Brandon, Amanda E. Manahan and Jeffrey S. Flashman for Plaintiff and Appellant.

White, Oliver, Amundson & Gallagher, Susan L. Oliver and Fernando Kish for Defendants and Respondents Fushion Food & Boba Cafe and Cuong Lien.

Caroline L. Dasovich & Associates, Caroline L. Dasovich and Shenne J. Hahn for Defendants and Respondents Capitol Security Services, Inc.

This case arises from an assault and battery against plaintiff Brian Hernandez in the parking lot of the Mercury Village Shopping Center (Mercury Village) where Hernandez and his girlfriend had gone for a gathering of car enthusiasts. Defendant Fusion Food & Boba Cafe (Fusion Food) leases premises within the shopping center.

The incident occurred when Hernandez attempted to defuse a verbal confrontation between his friend, Fernando, and a man named Christopher Jones. After initially walking away, Jones suddenly turned and without warning attacked Hernandez, punching him in the face and body, slamming him into the hood of a car, and then kicking him while he lay on the ground.

Defendant Capitol Security Services Inc's (CSSI's) on-site security employee tried to stop the assault, then called 911. The police arrived in three minutes, and paramedics then transported plaintiff to the hospital. Hernandez sustained severe injuries, including a broken left jaw and facial lacerations.

Hernandez filed a complaint against, among others, Fusion Food and CSSI for general negligence and premises liability.

Fusion Food and CSSI (collectively defendants) moved for summary judgment, asserting they had no duty to protect Hernandez from an unforeseeable violent attack because there had been no previous prior criminal acts at Mercury Village. The court granted summary judgment.

On appeal, Hernandez asserts the court erred in granting summary judgment because (1) prior criminal acts are not the sole factor in determining whether a duty existed for purposes of premises liability; (2) once the attack commenced, Fusion and

2

CSSI had a duty to intervene; (3) the provider of security services can be separately liable for negligence outside of the premises liability claim; (4) the fact criminal conduct was involved does not eliminate causation; and (5) the court improperly excluded certain evidence. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual Background*

At about 9:00 p.m. on the evening of April 29, 2008, Hernandez, who at the time of the incident was 19 years old, went to Mercury Village to attend a car rally and to meet other friends with his girlfriend. He saw a friend, Fernando, being confronted by Jones. Jones accused Fernando of stealing a car or car parts. At the time, Fernando was 16 years old, approximately five feet seven inches tall, and weighed about 130 pounds. Jones was in his 20's, approximately six feet four or five inches tall, and weighed 240 to 260 pounds. Hernandez attempted to calm Jones and stop the confrontation.

After initially walking away, Jones abruptly returned to the area where Hernandez was talking with his friends and without warning attacked Hernandez from behind. Jones struck Hernandez five times in the head and stomach, picked up his body and slammed it against the hood of a car, then stomped on his face and kicked him six times while he lay unconscious on the ground. This attack occurred in the presence of 15 or 16 witnesses.

In response to the sudden attack on Hernandez, CSSI's security employee immediately ran over to try to stop the fight, then called 911 to report the incident to police and request paramedic assistance for Hernandez. The police arrived within three minutes of the call.

3

The property manager for Mercury Village hired CSSI to provide security services. Fusion Food paid for some of the costs of CSSI, but had no involvement in the selection and hiring of CSSI. Fusion Food did not train or control CSSI guards who performed services at the shopping center.

The lease between Mercury Village and Fusion Food provides that Fusion Food does not own, maintain or control any part of the shopping center's common areas, including the parking lot and driveways. The parking lot where the assault occurred is a common area over which Mercury Village had exclusive control.

It is undisputed that Fusion Food, the property manager of Mercury Village, CSSI, and Hernandez himself were all unaware of any incidents of violence occurring at the shopping center prior to Jones's assault on Hernandez. In fact, the owner of Mercury Village stated in interrogatory responses that there were *no* prior violent criminal acts on the premises. (RA 191,198).

B. *Procedural Background*

Hernandez filed a complaint in April 2010 against Jones for assault and battery and against Fusion Food, Anza Pacific Properties, Inc., Mercury Village Holdings, and CSSI for general negligence and premises liability.[1] The complaint alleged that Hernandez suffered physical and mental injuries as a result of the assault.

---

[1] Jones, Anza Pacific Properties, Inc. and Mercury Village Holdings are not parties to this appeal.

Except for Jones, all defendants moved for summary judgment. The motions were based on the grounds that they had no duty to protect Hernandez from an unforeseeable violent criminal attack.

The court granted summary judgment in favor of all defendants. In granting summary judgment in favor of Fusion, the court noted that Hernandez alleged in his complaint that Fusion "did not adequately and properly train security guards to protect [Hernandez] from the criminal acts of third persons on the premises. It is undisputed, however, that no one from [Fusion] had any involvement in the training of the security guards." The court further found that, "[b]ased on the allegations of the complaint, the Court concludes that [Hernandez] is seeking to impose a duty of preventing future harm that is great (e.g., additional security) and has failed to articulate how the harm could have been prevented by simple means. The Court additionally concludes that the assault on [Hernandez] was, if anything, a mere possibility. Assessing both the burden and foreseeability issues in this case, independently, the Court concludes that [Fusion] did not owe [Hernandez] a duty to protect him from the unforeseeable criminal conduct by Christopher Jones."

The court sustained Fusion's evidentiary objections to certain documentary evidence submitted by Hernandez based upon a lack of authentication. The court also sustained Fusion's objections to the declaration of Hernandez's expert witness, Chris E. McGoey, that opined the possibility of fights breaking out at car rallies should have been foreseeable to Fusion as lacking in foundation and constituting an improper conclusion of law.

5

As to CSSI's motion for summary judgment, the court found that because there were no prior similar attacks, the attack was not foreseeable. The court also rejected McGoey's declaration that the attack was foreseeable as lacking foundation and an improper legal conclusion.

This timely appeal follows.

DISCUSSION

I. *STANDARDS GOVERNING SUMMARY JUDGMENT MOTIONS*

The summary judgment procedure is directed at revealing whether there is evidence that requires the fact-weighing procedure of a trial. "'[T]he trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist, and not to decide the merits of the issues themselves.' [Citation.] The trial judge determines whether triable issues of fact exist by reviewing the affidavits and evidence before him or her and the reasonable inferences which may be drawn from those facts." (*Morgan v. Fuji Country USA, Inc.* (1995) 34 Cal.App.4th 127, 131.) However, a material issue of fact may not be resolved based on inferences if contradicted by other inferences or evidence. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856.)

"The evidence of the moving party [is] strictly construed, and that of the opponent liberally construed, and any doubts as to the propriety of granting the motion [are to] be resolved in favor of the party opposing the motion." (*Branco v. Kearny Moto Park, Inc.* (1995) 37 Cal.App.4th 184, 189.) The trial court does not weigh the evidence and inferences, but instead merely determines whether a reasonable trier of fact could find in favor of the party opposing the motion, and must deny the motion when there is some

6

evidence that, if believed, would support judgment in favor of the nonmoving party. (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139, disapproved on other grounds in *Reid v. Google* (2010) 50 Cal.4th 512, 524.)  Consequently, summary judgment should be granted only when a moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)

Because a motion for summary judgment raises only questions of law, we independently review the parties' supporting and opposing papers and apply the same standard as the trial court to determine whether there exists a triable issue of material fact. (*City of San Diego v. U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575, 582; *Southern Cal. Rapid Transit Dist. v. Superior Court* (1994) 30 Cal.App.4th 713, 723.)  In practical effect, we assume the role of a trial court and apply the same rules and standards governing a trial court's determination of a motion for summary judgment.  (*Lopez v. University Partners* (1997) 54 Cal.App.4th 1117, 1121-1122.)  We liberally construe the evidence in support of the party opposing summary judgment (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142) and assess whether the evidence would, if credited, permit the trier of fact to find in favor of the party opposing summary judgment under the applicable legal standards.  (Cf. *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850.)

## II.  *ANALYSIS*

### A.  *Lack of Prior Incidents*

In *Wiener v. Southcoast Childcare Centers, Inc., supra,* 32 Cal.4th at page 1150, the California Supreme Court held that in the absence of a prior similar incident the

7

operator of a child care center did not owe a duty to protect against a violent criminal assault by a man intentionally driving a car through a four-foot-high chain link fence onto a playground and into a group of children. In doing so, our high court noted that "our cases analyze third party criminal acts differently from ordinary negligence, and require us to apply a heightened sense of foreseeability before we can hold a defendant liable for the criminal acts of third parties." (*Id.* at pp. 1149-1150; see also *Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1212 ["Absent foreseeability of the particular criminal conduct, there is no duty to protect plaintiff from that particular type of harm."].)

As such, foreseeability of third party criminal conduct "rarely, if ever, can be proven in the absence of prior similar incidents of violent crime on the landowner's premises. To hold otherwise would be to impose an unfair burden upon landlords and, in effect, would force landlords to become the insurers of public safety, contrary to well-established policy in this state." (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 679 (*Ann M.*), fn. omitted, disapproved on another ground in *Reid v. Google, supra,* 50 Cal.4th at p. 527, fn. 5.)

It is undisputed that Fusion, CSSI, the property manager for the shopping center, and indeed Hernandez himself were unaware of any prior similar acts of violence at Mercury Village.

Hernandez asserts that the lack of prior similar acts, alone, is insufficient to determine whether an occupier of land owes a duty to protect against the criminal acts of third parties. In support of this contention, Hernandez cites *Onciano v. Golden Palace*

8

*Restaurant, Inc.* (1990) 219 Cal.App.3d 385 (*Onciano*).  It is true that the Court of Appeal in *Onciano* did hold that a lack of prior incidents "does not by itself negate the element of foreseeability as a matter of law."  (*Id.* at page 393.)

However, the viability of *Onciano* is questionable in light of the subsequent Supreme Court decision in *Ann M., supra,* 6 Cal.4th 666.  (See *Eric J. v. Betty M.* (1999) 76 Cal.App.4th 715, 721, fn. 5.)  *Onciano* relied on *Isaacs v. Huntington Memorial Hospital* (1985) 38 Cal.3d 112 for the proposition that foreseeability can be established despite a lack of prior similar incidents on the premises.  However, the California Supreme Court later revisited and revised this rule in *Ann M., supra,* 6 Cal.4th at pages 678-679, holding that foreseeability requires prior similar incidents.

As Division 3 of the Fourth District Court of Appeal stated in *Eric J. v. Betty M., supra,* 76 Cal.App.4th at page 721, footnote 5:  "The viability of the holding in *Onciano* is questionable in light of the subsequent Supreme Court decision in *Ann M.*[, *supra,*] 6 Cal.4th 666.  *Onciano* relied on *Isaacs v. Huntington Memorial Hospital, supra*, 38 Cal.3d 112 to reject the idea that a lack of prior criminal activity was not dispositive in the landowner's favor, a fact which Justice Fred Woods would find troubling in a separate concurring opinion, where he lamented *Isaacs'*s 'broad brush dicta.'  (See *Onciano*[], *supra*, 219 Cal.App.3d at pp. 396-397 (conc. and dis. opn. of Woods (Fred) J.).)  Liability in the face of the absence of notice of prior criminal activity, however, *was* dispositive in favor of the landowner in *Ann M.*, a rationale which Justice Mosk, in his dissent in *Ann M.*, criticized as being inconsistent with *Isaacs*.  (See *Ann M., supra*, 6 Cal.4th at pp. 680-683 (dis. opn. of Mosk, J.).) "

The existence and scope of a business owner's duty to protect against a threat of future criminal activity, imminent or otherwise, depends on the foreseeability of the sort of criminal conduct that actually occurred. (*Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1195 ["defendants' duty of care did not include the hiring of security guards for the garage because the bank robberies were not sufficiently similar to the sexual assault crime to establish a high degree of foreseeability"], disapproved on another ground in *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 853, fn. 19; *Lopez v. McDonald's Corp.* (1987) 193 Cal.App.3d 495, 510-511 [existence of prior crimes on business premises in high crime area, including two robberies, did not make massacre by armed criminal reasonably foreseeable]; *Gregorian v. National Convenience Stores, Inc.* (1985) 174 Cal.App.3d 944, 950 ["While the proprietor of an all-night convenience store may . . . reasonably anticipate that his place of business will be the target of armed robbers, the same cannot be said for a crime resulting from gang violence."].)

"[I]n the case of criminal conduct by a third party, an extraordinarily high degree of foreseeability is required to impose a duty on the landowner, in part because 'it is difficult if not impossible in today's society to predict when a criminal might strike.'" (*Garcia v. Paramount Citrus Assn., Inc.* (2008) 164 Cal.App.4th 1448, 1457, italics omitted, quoting *Wiener v. Southeast Childcare Centers, Inc., supra,* 32 Cal.4th at p. 1150.) "In each case, however, the existence and scope of a property owner's duty to protect against third party crime is a question of law for the court to resolve." (*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1213.)

10

As we have discussed, *ante*, Fusion had no notice of any prior similar acts of violence at Mercury Village. The property manager and owner of Mercury Village similarly are not aware of any prior acts of violence. Indeed, the owner has stated that there were no prior acts of violence at that shopping center. CSSI is also unaware of any prior incidents of violence. Hernandez himself concedes he is unaware of any prior acts of violence. Thus, the court properly granted summary judgment because the criminal assault by the third party was not foreseeable.

B. *Proposed Measures To Prevent The Harm*

Hernandez also asserts that the court erred in granting summary judgment in favor of Fusion because its ruling was based solely upon a finding that there were no prior similar acts of violence. This contention is unavailing. The court also considered measures proposed by Hernandez to prevent the harm, as well as the burden on Fusion of adopting such measures.

The only measure Hernandez suggested was that defendants did not adequately train security guards to protect against criminal acts of third parties. However, it is undisputed that Fusion had no involvement in the training of security guards. Accordingly, the court correctly determined that Hernandez failed to identify how the harm could have been prevented by additional measures.

C. *Rowland Factors*

Hernandez also asserts that determining the existence and scope of the duty owed in this case requires application to the factors announced in *Rowland v. Christian* (1968) 69 Cal.2d 108, 113 (*Rowland*). This contention is unavailing.

11

The factors announced in *Rowland* are used to determine the scope and existence of duty in *ordinary* premises liability cases. Here, we have a case involving an injury caused by the criminal act of a third party. The lack of forseeability alone in this case is dispositive.

D. *Duty To Intervene*

Hernandez asserts that Fusion and CSSI had a duty to intervene once the altercation between he and Jones commenced. We reject this contention.

Initially, this argument has been waived as Hernandez did not raise it below. We do not consider theories that were not advanced by an appellant before the trial court. (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676.)

Moreover, CSSI presented uncontroverted evidence that its security guard *did* attempt to intervene and then called 911. Moreover, as to Fusion, there is no evidence that the altercation took place in the presence of any of its employees.

E. *Evidentiary Objections*

Hernandez asserts that the court erred in sustaining objections to its evidence made by Fusion and CSSI. This contention is unavailing.

The court expressly stated in its ruling granting summary judgment in favor of Fusion that "[e]ven if the Court were to overrule the Defendant's evidentiary objections and consider all evidence submitted, this Court is of the opinion that there simply were no similar prior incidents or other circumstances that would support imposing a duty on Defendant to protect against the harm suffered by Plaintiff." (Italics omitted.) Thus, as

12

to Fusion, even if the court erred in sustaining its evidentiary objections, it would not change the result of Fusion's motion for summary judgment.

Hernandez first asserts the court erred in not considering a "supplemental" declaration that was filed to authenticate documents he filed in opposition to the summary judgment motion. However, the supplemental declaration included in the appellant's appendix does not have a stamp indicating it was ever filed with the court. Therefore, the court did not err in failing to consider that declaration as the record does not reflect that it was ever presented to the court.

Hernandez also asserts the court erred in sustaining the defendants' objections to the declaration of his security expert. This contention is unavailing.

"There are limits to expert testimony, not the least of which is the prohibition against admission of an expert's opinion on a question of law." (*Summers v. A. L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1178.) Moreover, "'[t]he manner in which the law should apply to particular facts is a legal question and is not subject to expert opinion.'" (*Id.* at p. 1179.) Further, "an expert opinion based on speculation or conjecture is inadmissible." (*Lockheed Litigation Cases* (2004) 115 Cal.App.4th 558, 564; *Mitchell v. United Nat'l Ins. Co.* (2005) 127 Cal.App.4th 457, 478; Evid. Code, § 801, subd. (b).)

Here, the court properly sustained the defendants' objections to McGoey's declaration. For example, in his declaration McGoey concluded that Hernandez was injured "as a direct result of a [CSSI] guard allowing a large crowd of young men to loiter while attending a car rally in the parking lot." There is no evidence in the record that a "large crowd of young men" was present at the time of the attack, and the term "loitering"

13

is itself a legal conclusion. McGoey further opines that "based on the broad range of [CSSI's] responsibilities and powers . . . it is my opinion that [CSSI] maintained and exercised control over the premises while they worked at Mercury Village during the car rallies." This opinion is also an improper legal conclusion. McGoey further opined that "[b]ased on the information that was known to [CSSI] before the incident . . . , it was foreseeable that a fight or another type of violent incident could occur in the parking lot during one of the rallies." This opinion is also an improper legal conclusion. It is also speculative because, as we have discussed, *ante*, there were no prior similar incidents.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

NARES, J.

WE CONCUR:

HUFFMAN, Acting P. J.

HALLER, J.

14